## BROCKWAY v. THOMAS.

1. UNLAWFUL DETAINER: *Parol lease for three years: Claim for improvement: Specific performance.*
   Where a party enters into possession of premises and makes improvements upon them under a parol contract for a lease for three years, with the privilege of making the improvements in part payment of the rent, he can not be lawfully dispossessed of them within a year after the contract, unless he is first paid for the improvements. But the making of such entry and improvements under such contract is no defense at law to an action of unlawful detainer commenced after a year from making the contract; but is such a part performance as would entitle the lessee, in equity, to specific performance of the contract.

2. LEASES: *Parol, not extended beyond a year by advance payment of rent.*
   No advance payments of rent under a parol contract for a lease for more than one year can, in law or equity, extend the tenancy beyond a year.

3. UNLAWFUL DETAINER: *Burden of proof.*
   In an action of unlawful detainer, proof that the defendant was a tenant at will under the plaintiff, and demand of possession, and refusal, are sufficient to maintain the action. If there be a special contract, or circumstances to impair or defeat the plaintiff's right of possession, they should be pleaded and proved by the defendant.

4. SAME: *Damages for defendant.*
  Evidence of loss of profits in the defendant's business by being deprived
    of a business stand by a writ of unlawful detainer, is not admissible in
    proof of his damages sustained by the action.


APPEAL from *Jefferson* Circuit Court.
Hon. X. J. PINDALL, Circuit Judge.


REPORTER'S STATEMENT.

This was an action of unlawful detainer instituted in
November, 1875, in the circuit court of Jefferson county,
by Brockway against Thomas for possession of an im-
proved lot in Pine Bluff. A writ was issued, and executed
by putting Brockway in possession. At the return term
a demurrer was sustained to the plaintiff's complaint, and
he thereupon, by leave of court, amended it; but the defend-
ant made no answer to the amended complaint. After-
ward the circuit court, holding that the sustaining the de-
murrer to the original complaint was a quashal of the writ,
ordered a restitution of the property to the defendant, and
a writ of inquiry to assess his damages. The damages
were assessed by the jury and judgment was rendered for
them and for the cost of suit, in favor of the defend-
ant. The plaintiff appealed to this court, and the judgment
was here reversed and the case remanded, on the ground
that the defendant was not entitled to judgment without
an answer to the amended complaint. See *32 Ark., 311.*

Upon the return of the case to the circuit court, the de-
fendant filed an answer to the amended complaint, denying
the unlawful detainer, and the case was submitted to a
jury on the seventeenth of February, 1879.

The evidence for the plaintiff showed that a Mrs. Hol-
land, the former owner of the premises, had, about June,

1875, rented them to the defendant by the month, until she should sell them; that on the thirteenth day of October, 1875, the plaintiff purchased, and acquired her title to them, and before the commencement of the suit gave the defendant due notice to quit possession.

The evidence for the defendant showed that his renting was by a parol contract for a lease for three years, with the privilege of putting suitable improvements and fixtures in the house for a saloon, to be credited upon the rent; and that he had made the improvements to the value of $269.

Upon the question of damages sustained by the defendant by being dispossessed under the writ, the defendant was permitted by the court, against the plaintiff's objections, to testify that he had been doing a good business, and was damaged fully $5,000 by having to leave the stand, and by being thrown out of business—principally by losing the stand. That the damages were what he could have made during the period from the service of the writ to the time of the trial, if he had not been dispossessed of the premises.

Numerous instructions were given for the plaintiff and defendant, and of the court's own motion. Such as this court has deemed it necessary to review are sufficiently stated in the opinion.

The jury found for defendant, and assessed his damages at $2,000. The plaintiff filed his motion for new trial, which being overruled, he filed his bill of exceptions and appealed.

*F. W. Compton*, for appellant:

The doctrine of part performance applies only in equity. *Brown on Frauds*, sec. 451; *Sch. & Lef.*, 123; 12 *C. B.*, 283; 3 *Greenl. (Me.)*, 345; 2 *Fairf. (Me.)*, 512; 13 *Vt.*, 24; 20

Brockway v. Thomas.

*Pick.*, 138; 18 *Conn.*, 231; 14 *Barb.*, *N. Y.*, 90; 1 *Mar.* (*Pa.*), 292; 1 *Smith* (*Ind.*), 82; 6 *Ala.*, 351.

Tenancy was monthly.   *Gantt's Digest, sec.* 2950.

Damages excessive.

EAKIN, J.   This is the case remanded, upon the opinion reported in *32 Ark.*, *311*, which was again tried below, upon an answer which, without objection, was accepted as putting in issue all material facts, as alleged in the complaint after amendment.

We find, amidst a conflict of evidence on other points, the fact on all parts admitted, that defendant was a tenant of plaintiff's vendor, claiming no other right of property in the house than as such.   There was proof also by defendant, tending to show that some time in 1875 he had rented the premises by parol contract for three years; and had also a verbal contract with the former owner, by which he might make improvements upon the house to fit it for a saloon, which he had on his part performed to the value of $269, and for which he was entitled to retain rents.   All agree that the rents were to be paid by the month, at the rate of $75 for the fall and winter months, and $50 for the *dull* or summer months.   There was counter-evidence to the effect that the tenancy by verbal contract was purely at will, to cease immediately on the sale of the property by the owner, and without any allowance for improvements. These matters were for the jury.

The court, of its own motion, after acting upon the motions for instructions upon both sides, advised the jury, that if they believed the defendant entered upon the premises under a verbal contract for three years, with the privilege of making certain improvements, to be allowed out of the rents, and he made them, he could not be turned out

1.   Parol lease for three years and improvement, good for one year.

until the improvements were paid for; but the jury were not to consider the improvements at all, unless they were made under such a contract.

This, under the circumstances of the case, was correct, since it seems that the action was begun within a year. Our statute of frauds varies in this respect, slightly, from that of *29 Charles, 11, secs. 1, 2 and 3.* That makes all parol leases have the force and effect of estates at will only, except those for three years or less, where the reserved rent is at least two-thirds of the improved value. Our statute (*2960 Gantt's Digest*), after declaring that all parol leases shall have the force and effect of estates at will only, proceeds, in the same section, to provide that they "shall not, either in law or equity, be deemed or taken to have any other or greater effect or force, than as leases not exceeding the term of one year." By the fifth clause of section 2951, it had been provided that no action should be brought to charge any one on a contract for a lease for a longer term than one year, unless the contract should be shown by some writing.

Without stopping to discuss the obvious obscurity of section 2960, we may say that under its provisions, and in accordance with its intent, a parol lease of three years may have such vitality as to support agreements with regard to the subject-matter, and, for the purposes of justice, be enforced for one year, although made for a longer time. This doctrine was recognized in *Halbut v. Forrest City, 34 Ark., 246.* If it were true that the improvements were made under such a contract, as some of the evidence tended to show, the lease should have force during one year at least, if·necessary to protect the tenant in his expenditures, the facts being, of course, left to the jury.

But this would result from the agreement itself, and not, in an action at law, from the equitable doctrine of part

performance. The operation of that doctrine would re-quire a cross-complaint in equity, in which the lessee would seek to have his term for three years quieted, and might recover, as an incident to the suit, such damages as he may have suffered from the dispossession. There was no such cross-complaint, nor transfer to the equity docket.

The court, in the defendant's third instruction, erred in saying to the jury, in effect, that if the defendant entered under a verbal lease for three years, and made improve-ments, in pursuance of it, of a permanent nature, which were accepted by the plaintiff, it would be such a part per-formance as would entitle defendant to claim the full ben-efits of such lease for three years. This is the true rule in equity alone, and can not be used in defense of an action of forcible detainer. It was a very material instruction, as it might affect the damages, although the plaintiff may not have had the right to begin the action during the first year.

*Part performance no defense at law.*

And so, also, the court erred in its eighth instruction, given for defendant, which was to the effect that if they found the defendant had, either in money or by improve-ments of value, paid rents for a time beyond that of his being turned out by the writ, the verdict should be in his favor. Although technically correct within a year's period, it was misleading in its tendency to make upon the jury the im-pression that the payment of rents in advance, or the making of valuable improvements, gave a right of enjoyment to defendant to the extent of the time which the payments would cover. This consideration would affect damages. No advance payments can, in law or equity, be construed to extend the tenancy beyond a year.

*2. LEASES: Parol, not extended beyond a year by advance payments of rent, or improvements.*

The seventh instruction given for defendant would lead the jury to believe, that, throughout, the burden of proof was upon the plaintiff, and that his evidence must be re-

*3. UNLAW-FUL DE-TAINER: Burden of proof.*

quired to preponderate on all questions of fact involved. This was error prejudicial to plaintiff. His case, *prima facie*, would be made by showing tenancy under him by parol (which the law would, in the absence of proof, presume to be at will), demand of possession, and refusal. He was not required to prove negatives, and show that there was no special contract, or circumstances to impede or defeat his right of possession. These were matters of defense which should, if proper pleading had been enforced, have been set up in the answer by way of defense, and sustained by proof. As to them, the burden of preponderance in the minds of the jurors was upon the defense. The error may have affected the verdict.

The trial began on the seventeenth of February, 1879, more than three years after the expulsion of defendant by the writ.

4. ——: Damages for defendant. The court, against the objection of plaintiff, permitted defendant to give evidence of his whole damage, in the loss to his business, up to the date of the trial, which he said amounted to $5,000. This was an error. Such damages were merely speculative, and the ruling of the court must have given the jury a false idea of the true rule by which damages were to be estimated. Business profits are not so certain as to make one who deprives another of a business stand their insurer for a course of future years, even if this had been the only house in Pine Bluff which he might have rented for the purpose. Defendant was not entitled to sit still and do nothing, and without risk of capital, and expenditure of labor and time, recover profits until the day of trial. Besides, the time extended far beyond his utmost claim, which was a period of three years from the beginning of the lease.

The testimony should have been confined to actual damages incurred at the time.

The court, indeed, instructed the jury that they might give defendant such actual damages as they might find proven by the evidence before them, but that did not cure the admission of improper evidence. The jury rendered an enormous verdict of $2,000 without any proof of considerable damage of an immediate and direct nature. They could only have reached that result by estimating remote and consequential damages.

The errors indicated were properly embraced in the motion for a new trial, and it should have been granted.

For error in refusing, reverse the judgment and remand the cause for further proceedings consistent with this opinion.