<hr />

## NEAL v. HARRIS.

### Opinion delivered November 24, 1919.

1. LANDLORD AND TENANT—LEASE FOR ONE YEAR WITH REFUSAL FOR TWO MORE YEARS.—A lease of a farm for 1918 provided: "Said party of the first part agrees to give party of the second part the refusal of the above place for the years 1919 and 1920 at the above price, $7 per acre." *Held,* the agreement contemplated and provided for no new contract after 1918; and when the lessee exercised his option and gave the required notice, the parties were bound for the two additional years.

2. SAME—SAME—FORM OF NOTICE.—When the provision for renewal contains no requirement that the exercise of the option to renew shall be in writing or orally given, notice may be given either way.

3. LANDLORD AND TENANT—LEASE OF FARM—DESCRIPTION.—Parol evidence is admissible for the purpose of applying the description contained in a written lease in order to show that there are lands of that description; but such evidence is not admissible for the purpose of supplying or adding to the description, in order to make it comply with the requirements of the statute of frauds.

4. SAME—SAME—SAME—ORAL EVIDENCE.—Where the language used in lease shows that it was understood that A. was to have the place owned by B. in sections 4 and 9, township 2 north, range 2 east, oral evidence is admissible to show what was the place owned by B. there.

5. SAME—SAME—SAME—SAME.—B. leased lands to A., describing the same as "his place about ten miles west of Marianna * * * and situated in sections 4 and 9, township 2 north, range 2 east, containing about 275 acres in cultivation * * *." *Held,* the description was sufficient and that oral testimony was admissible for the purpose of further identifying the lands described.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*R. D. Smith, R. J. Williams* and *R. B. McCulloch,* for appellant.

1. The statute of frauds has no application, and appellee should not have been allowed to vary the terms of the written contract by showing that certain portions of the land were not included in the contract.

The court erred in sustaining objection to question asked witness J. E. Neal as to notice to exercise the option. The terms of the contract did not provide for an option to renew but granted to the lessee the privilege of extending the term. An option to renew contemplates a new lease will be executed. On the other hand, the covenant which grants the privilege of extending the term does not contemplate a new lease, but simply contemplates that, upon the exercise of the privilege by the lessee, he holds for the additional term under the same lease. The contract does not provide for a renewal contract, but grants the lessee the privilege of extending the term for two more years under the old lease; the word ''refusal'' means the option of renting for the period named on the same terms, etc. 7 N. Y. 472. The provisions for an extension of the term at the option of the lessee, upon the exercise of the privilege are treated as a present demise for the full term to which it may be extended. Ann. Cases 1913 C, 642; 24 Cyc. 1008; 109 Ill. App. 588; 49 S. W. 309; 27 Wis. 272; 109 Wis. 58.

2. The court erred in instructing the jury that if appellant wished to exercise his option of renewal of the rental of the place for two years he would be required to give appellee written notice to that effect. No express notice was necessary at all. 76 Ark. 251; 109 Ill. App. 588; 8 Kan. App. 421; 51 N. H. 415; 16 R. C. L. 297; 19 Ann. Cas. 399; Ann. Cases 1913 C, 641; 93 Ark. 252.

3. The court erred in permitting appellee to testify that he rented a less amount of land than that mentioned in the contract. The terms of a written contract can not be varied or contradicted by parol testimony. 10 R. C. L. 1016.

4. The court erred in sustaining objection made by counsel for appellee to question propounded witness J. E. Neal on redirect examination and remarking immediatel thereafter as follows: Q. How much did you have ploughed up when this suit was brought? The question was material, as it tended to show that appellant had elected to hold the land for the additional term. The fact that a lessee has exercised such an option may be shown by circumstances. Retaining possession and cultivating the land as under the original lease tended to show that appellant had exercised the privilege. The question was relevant and material. Furthermore it was highly prejudicial for the court to remark in the hearing of the jury that the answer would be immaterial. Such a statement was an expression of opinion.

5. The court erred in taking into account the statute of frauds which was not pleaded. 105 Ark. 638; 71 *Id.* 302; 96 *Id.* 184; 96 *Id.* 505.

*Daggett & Daggett,* for appellee.

1. There are two separate and distinct tracts of land involved here, and the testimony of Harris falls squarely within the rule that parol testimony is admissible to explain the terms of an ambiguous contract. The ambiguity arises in the meaning of the expression "his place" as two tracts or places in the Harris place. 93 Ark. 191; 103 *Id.* 260.

2. The intention of the parties gathered from the contract as a whole is the guide to proper construction. The terms of the contract did not grant to the lessee the privilege of extending the term of the original contract, but conceding the language is such as would grant a renewal privilege, only gave him the option to renew for the two years, that is, for the years 1919 and 1920. 16 R. C. L., sec. 399. The case in 93 Ark. 252 is not in point, nor is 71 *Id.* 251. If "refusal" means an "option to rent," Neal would have only an "unaccepted offer" binding Harris only, and it devolved upon Neal to accept the

offer and demand a contract for the term and the giving of a notice of renewal or extension would not suffice.

3. The contract for an additional term is vague and indefinite and incapable of enforcement without additional agreements. 6 R. C. L., secs. 38-59; 9 Cyc. 248 (c). Notice was served on Neal February 13, 1919, demanding surrender of possession, and the lands are described sufficiently to put him on notice that the contract was at an end.

4. There is nothing in the contention of a failure to plead the statute of frauds. The issue was made on the pleadings and the question was whether defendant could hold the lands under the contract relied on. There was nothing to submit to a jury and the judgment should be affirmed.

### STATEMENT OF FACTS.

This is an action of unlawful detainer. The lease upon which the action is based is as follows:

"For and in consideration of the sum of one dollar cash in hand paid, said party of the first part (W. F. Harris) agrees to rent to said party of the second part (J. E. Neal) his place about ten miles west of Marianna for the year of 1918, and situated in sections 4 and 9, township 2 north, range 2 east, containing about 275 acres in cultivation for the price of $7 per acre, said acreage being subject to survey, and said survey to include yards and garden.

"Said party of the first part agrees to put all houses and cabins in first-class condition, also to put all fences in good repair, and said party of the first part agrees to have wells with water at the various houses on the above mentioned lands.

"Said party of the first part agrees to give party of the second part the refusal of the above place for the years 1919 and 1920, at the above price, $7 per acre.

"Said party of the second part agrees to put in all new ground possible for a crop for the year 1918, and said party of the first part agrees to pay said party of the second part the sum of $5 per acre for what new ground

he clears up and puts in, also crop for 1918; and if said party of the second part clears up said new ground and fails to cultivate same, then said party of the first part is under no obligations to said second party.

"Said party of the second part agrees not to permit any waste upon said land and to cut no timber therefrom, except for necessary firewood and repairs, without written consent of the party of the first part.

"Said party of the first part agrees to give said party of the second part possesssion of the above lands on or about January 1, 1918, and said party of the second part agrees to keep said premises, fences, etc., in the same repair and condition that the same are in when said second party takes possession."

In February, 1919, J. E. Neal, the lessee, having failed to vacate the premises, W. F. Harris, the lessor, gave him a written notice to quit and Neal refused to vacate the premises on the ground that he had exercised his option to extend the lease and for that reason was in lawful possession of the premises. Neal offered to prove that he gave Harris verbal notice to extend the lease for the years 1919 and 1920 at the price of $7 per acre as provided in the lease.

The court was of the opinion that the lessee was required to give written notice before the lease could be extended and refused to allow the offered testimony to go to the jury. At the conclusion of the testimony, the court instructed the jury to return a verdict for the plaintiff, Harris, for the possession of the land mentioned in the complaint. Other facts will be referred to or stated in the opinion.

Judgment was rendered upon the verdict and the defendant has appealed.

HART, J., (after stating the facts). In the first clause of the lease, W. S. Harris rented his place ten miles west of Marianna to J. E. Neal for the year 1918. A subsequent clause of the lease is as follows:

"Said party of the first part agrees to give party of the second part the refusal of the above place for the years 1919 and 1920, at the above price, $7 per acre."

The correctness of the decision of the court below depends upon the construction to be given that section of the lease which we have just copied. Both the text writers and the adjudicated cases make a distinction between a covenant in a lease for a renewal and a provision therein for the extension of the term at the option of the lessee. In the latter case upon the exercise of the option by the lessee there is granted a present lease for the full term to which it may be extended and not a lease for the lesser period with the privilege of a new lease for the extended term. In discussing the difference between the extension of a lease and the renewal thereof in Underhill on Landlord and Tenant, Vol. 2, par. 803, it is said:

"The question is always one of construction, depending wholly upon the language of the lease in each particular case. No general rule can be gathered from the cases by which one can distinguish between a present demise which shall determine at a fixed date or shall endure for a further period thereafter at the option of the tenant, and a lease for a definite term with an agreement to make a new lease when it shall have ended. Thus a lease for a term of five years, with a privilege of renting for another term, requires a new lease to be executed, and a mere holding over by the tenant is not a renewal. But in the same State it has been held that a lease for three years, with a privilege of five years, does not require any renewal for the exercise of the option by continuing in possession extends the lease. The lessee can either go out or stay in at the end of three years. So, where a lease gives the lessee a renewal at his election, and he elects to continue, a present demise is created which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease should be executed. In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to con-

tinue to hold under the original lease. The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties. The reason for the presumption is the fact that the making of a new lease will involve trouble and expense which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense.''

To the same effect see 16 R. C. L., sec. 389, p. 885; Tiffany on Landlord and Tenant, Vol. 2, pars. 218-219, and pp. 1517-1518; Jones on Landlord and Tenant, sec. 340, and 24 Cyc. 1019. The rule itself is well settled, and the only difficulty is in the application of it to a given lease.

In *Kramer* v. *Cook,* 7 Gray (Mass.), 550, there was a lease for three years at a certain rent and at the election of the lessee for the further term of two years next after the term of the three years at an increased rent. This was held to be an extension and not a renewal. The court said:

''The provision in the lease is not a mere covenant of the plaintiff for renewal; no formal renewal was contemplated by the parties. The agreement itself is, as to the additional term, a lease *de futuro,* requiring only the lapse of the preceding term and the election of the defendant to become a lease *in praesenti.* All that is necessary to its validity is the fact of election.''

In *Montgomery* v. *Board of Commissioners of Hamilton County,* 76 Ind. 362, 40 Am. Rep. 250, the lease describing the duration of the term is as follows: ''The term of three years * * * with the privilege of five years at the same rate, at the option of the said board of commissioners.'' The court held that the termination of the lease depended upon the option of the lessee and that if the option was exercised the term continued for five years. The court said that there was to be no renewal, as the term was for either three or five years, its duration depending upon the lessee.

(1) So in the present case no new contract was provided for in the lease itself. The formal covenant of renewal usually provides specifically for the execution of a new lease. The extended term in the lease under consideration was fixed by and was a part of the original lease. When the lessee exercised his option and gave the required notice the parties were bound for the two additional years. No question as to the application of the statute of frauds arises and the court was wrong in so holding. If the lessee did not give a notice such as the law would enforce, his estate terminated at the end of the first period of one year; if he did give such a notice, it would continue to the end of the second period of two years. In either event, the lease itself created and defined the term and the statute of frauds had nothing to do with the case. *McClelland* v. *Rush,* 150 Penn. St. 57, and the authorities above cited.

(2) This brings us to a consideration of the character of the notice. The lessee offered proof of the giving of a verbal notice of his intention to extend the lease to the lessor. There was no agreement contained in the lease as to how the lessee should exercise his option of extending the lease, whether orally or by writing. It might therefore be shown either way, the same as any other fact not required to be in writing. This view is supported by the case of *Bluthenthal* v. *Atkinson,* 93 Ark. 252. In that case the lease provided for sixty days' notice, but did not state whether it should be given orally or in writing. The notice was given by a letter which miscarried in the mail and was not received by the lessor. The lessee sought relief in a court of equity on the ground that the failure to get the notice to the lessor was unavoidable. The court denied the relief, and in discussing the question said:

"The attempt to give the notice by letter was not a mistake on the part of the appellant. He intended to give it this way, but he knew he could give it orally or by sending notice through a messenger, or officer. He chose the mails. This was not a mistake at all, or, if so, cer-

tainly not one that a court of chancery will correct. It was the duty of appellant under the contract to give the lessor notice. Nothing short of the information which the contract specified, communicated in some manner to the lessor, would fulfill the requirements of the law. Appellant, having choice of a number of agencies to make the communication, is responsible if through the agency chosen he fails to make it. The failure in such case is but the failure at last of the one making the selection of methods, and equity can not relieve from the consequences of such failure on the ground of accident or mistake.''

Other cases holding that in cases of this sort where no particular form of notice is prescribed by the lease oral notice is sufficient, are the following: *Broadway & Seventh Ave. R. Co.* v. *Metzger,* 15 N. Y. Sup. 662; *Darling* v. *Hoban,* 19 N. W. (Mich.), 545; *Stone* v. *St. Louis Stamping Co.,* 29 N. E. (Mass.), 623; *Quinn* v. *Valiquette,* 14 L. R. A. (N. S.), (Vt.), 962, and *Delashman v. Berry,* 20 Mich. 292.

(3-5) It is also claimed that the lease does not describe the land with sufficient certainty and for that reason is unenforceable. The contract states that Harris leased ''his place about ten miles west of Marianna for the year 1918 and situated in sections 4 and 9, township 2 north, range 2 east, containing about 275 acres in cultivation for the price of $7 per acre, said acreage being subject to survey, and said survey to include yards and gardens.''

It is indispensable that the premises leased should be properly described in apt words and clear terms so as to be capable of identification. Parol evidence is admissible for the purpose of applying the description contained in the writing in order to show that there are lands of the description contained in it; but such evidence is not admissible for the purpose of supplying or adding to the description, in order to make it comply with the requirements of the statute of frauds. Underhill on Landlord and Tenant, Vol. 1, sec. 237; Tiffany on Landlord and

Tenant, Vol. 1, sec. 266, and Jones on Landlord and Tenant, secs. 98, 99.   See also *Miller* v. *Dargan*, 136 Ark. 237. The language used in the lease shows that it was understood that Neal was to have the place owned by Harris in sections 4 and 9, township 2 north, range 2 east.   Oral evidence was admissible to show what was the place owned by Harris there.   The lands were particularly described by section, township and range and the oral testimony was admissible for the purpose of further identifying the lands described.

It follows that the court erred in directing the jury to return a verdict for the plaintiff.   For that error the judgment must be reversed and the cause remanded for a new trial.