WAKIN *v.* MORGAN.

Opinion delivered July 7, 1924.

1. LANDLORD AND TENANT—UNLAWFUL EVICTION—DAMAGES.—In an action for unlawful eviction, evidence of net profits from the business and of the necessity of selling furniture and fixtures was inadmissible as too remote and speculative for consideration as elements of damage, in the absence of evidence that the rental value was greater than the rent agreed to be paid and

that the price received for the furniture was affected by the eviction.

2. LANDLORD AND TENANT—UNLAWFUL EVICTION—RESTITUTION.— Judgment for restitution of the premises to defendants, on a verdict awarding them damages for unlawful eviction, was proper, in view of Crawford & Moses' Dig., § 4854.

3. APPEAL AND ERROR—CURE OF ERROR BY REMITTITUR.—Error in a judgment in forcible detainer awarding defendant damages in addition to restitution of the premises *held* curable by remittitur.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; affirmed.

*John N. Cook,* for appellant.

The court erred in permitting the appellees to reopen the case and testify as to damages. The instruction on the measure of damages given by the court was erroneous and prejudicial, and should not have been given. 36 Ark. 524; 76 Ark. 468; 110 Ark. 504. The question of restitution of the property was not submitted to the jury, and the verdict was not for restitution. It was error to put this in the judgment. 5 Ark. 700; 130 Ark. 575.

WOOD, J. This is an action of forcible detainer instituted by the appellants against the appellees to recover possession of certain space in a building in Texarkana, Arkansas, owned by the appellants. The appellants alleged that they were the owners of the space mentioned; that they had leased the same to a Greek named Tony, from day to day, at the price of $1 per day; that appellee Morgan acquired an interest in the business with Tony, and entered into possession of the space, and paid appellants $1 per day until about October 26, 1922, at which time Morgan acquired the interest of Tony; that on October 31 the appellants caused a notice to be served upon appellees to vacate the premises on or before the 11th day of November, 1922; that appellees refused to quit and deliver the possession to appellants, but unlawfully detained the same. Appellants alleged that the appellees were due them for rental the sum of $18, and that they were damaged by the unlawful detention in the sum of $50. They therefore prayed for a writ of possession and judgment in the sum of $68.

The appellees, in their answer, admitted that the appellants were the owners of the space in controversy and that same was rented to Tony at $1 per day; that they purchased from Tony the restaurant business which he was conducting in the space mentioned; that, prior to the purchase of such business, furniture and fixtures from Tony, they leased the space in controversy from the appellants at a rental of $7.50 per week for a period of one year, for the purpose of conducting the restaurant business; that the appellant well knew the character of the business which was to be conducted by the appellees, and contracted with them to permit them to use gas on the same meter that was used by the appellants in the building, the appellees to pay one-half consumed as shown by the meter. Appellees alleged that they took possession of the premises, and paid rent for the first week, which was accepted by the appellants; that, shortly thereafter, the appellants disconnected the gas from the space occupied by the appellees, which compelled them to use other fuel to conduct their business; that the appellees tendered the next week's rent when due, which the appellants refused to accept, and ordered the appellees to vacate the building; that, by reason of the wrongful acts of the appellants, the appellees had been damaged in the sum of $500, and further damaged by reason of the issuance of the writ of possession under which they were unlawfully deprived of possession, in the sum of $200. They prayed judgment in the sum of $700 and for costs.

The testimony on behalf of the appellants tended to prove that they rented the space to the Greek, who stayed over a month and a half, paying the appellants $1 per day. The Greek left on the 26th of October, and Morgan was in charge of the place. The appellants had no agreement with him. They told Morgan to get out. He stated that he was staying there until the Greek went to Little Rock. Appellants didn't have any trade with him at all, and served notice on him to get out. He tried three or four times to pay the appellants money, but they refused, and

told him they wanted their store. The space was rented to the Greek for no definite time—only by the day. The appellants had ordered the Greek out before the appellees took possession, and demanded possession of the appellees the day the Greek left the city. Morgan stayed in the building after the Greek left sixteen days, and never paid the appellants a cent. He wanted to pay and offered to pay three times, but the appellants refused to accept any rents from the appellees. They gave appellees notice to quit on November 11, 1922, and filed suit on November 13, 1922, and the sheriff put them out.

The testimony for the appellees tended to prove that the Greek was in possession of the space in controversy, doing a restaurant business. Appellees wished to purchase the business, and did buy it from the Greek. They had an agreement with the appellants before they purchased. Appellants made a contract with the appellees and with the Greek that the appellees should have the space for twelve months, provided they paid the rent once a week. Appellees paid one week's rent. The Greek stayed with the appellees a few days after their purchase. When appellees took charge they did not owe appellants any rent. They paid the first week's rent in advance, and tendered the rent for the next week, but the appellants refused to take it. Appellees were put out by the sheriff. They were in business there about sixteen days.

Over the objection of appellants the court permitted the appellees to prove that their net profits were $35 the first week and the second week about $40. They were also permitted to prove, over the objection of the appellants, that they were compelled to sell their furniture and fixtures at a loss, and also that they were not able to get any other place to do business in Texarkana. The court also permitted the appellee Morgan to testify, over the objection of appellants, that he remained in Texarkana, looking for work, for about two months.

The court instructed the jury, in effect, that, if they found from a preponderance of the testimony that the

appellees entered into a contract with the appellants by which the appellants agreed to rent or lease appellees the room in controversy for one year, they should find for the appellees, ''and assess their damages at whatever you find from a preponderance of the evidence that they were damaged by having been evicted from the premises.'' The appellants objected to the instruction as to the measure of damages, and requested the court to instruct the jury that, if they found for the appellees, in arriving at a verdict as to the damages they could not consider any evidence as to the net profits. The court refused this prayer. To the rulings of the court the appellants duly excepted. The jury returned a verdict in favor of the appellees in the sum of $100 damages. The court thereupon entered a judgment that the possession of the premises in controversy be restored to the appellees by the appellants, and that the appellees recover of the appellants the sum of $100 damages, and costs, and ordered a writ of restitution, and also that execution might issue. From that judgment is this appeal.

The court erred in permitting the appellees to testify as to what were the net profits from their business and that, after they were evicted by the appellants, they were compelled to sell their furniture and fixtures, and also that they were compelled to go out of business, and remained in Texarkana two months looking for work. This testimony tended to prove damages which were too remote and speculative to be considered as elements of damage. The appellees were entitled only to the actual damages which they sustained by reason of their eviction from the premises, which the jury found was unlawful.

In *McIlvaney* v. *Smith,* 76 Ark. 468, Judge RIDDICK, speaking for the court, announced the rule applicable to such cases as follows: ''When a landlord unlawfully evicts a tenant from the premises, the tenant is entitled to recover in damages whatever loss results to him as a direct and natural consequence of the wrongful act of the landlord. If the rental value of the place from which

he is evicted is greater than the price he agreed to pay, he may recover this excess, and, in addition thereto, any other loss directly caused by the eviction, such as the expense of removal to another place.'' See also *Byers* v. *Moore,* 110 Ark. 504; *Brockway* v. *Thomas,* 36 Ark. 524.

The court erred in its instructions in not confining the jury to the actual damages and in not telling the jury that they could not consider net profits as an element of damage. There is no testimony in the record tending to prove that the rental value of the premises during the time the appellees were ousted was greater than that which they agreed to pay. The appellees testified that, by reason of the eviction, they were compelled to sell their furniture and fixtures, but there is no testimony tending to prove that the price of such furniture and fixtures was in any manner affected by the eviction. The testimony in the record furnishes no predicate upon which the judgment for damages in the sum of $100 can be sustained.

The judgment for restitution based upon the verdict was correct and in accordance with the statute (§ 4854, C. & M. Digest). The errors entering into the judgment related only to the damages, and these can be cured by a remittitur. If therefore the appellees will within ten days remit the damages adjudged against the appellants, the judgment will be affirmed. Otherwise, for the errors indicated, the judgment will be reversed and the cause remanded for a new trial as to the damages.