TEMPLE *v.* TOBIAS.

4-2827

Opinion delivered January 23, 1933.

*Bridges, McGaughy & Bridges,* for appellant.

*Isaac McClellan* and *Wm. J. McClellan,* for appellee.

MEHAFFY, J. On March 4, 1932, John Temple filed suit in the Grant Circuit Court against T. C. Tobias and Eva Tobias, alleging that he was the owner in fee simple and entitled to the immediate possession of certain described lands; that the defendants wilfully and without right were holding over said lands after the termination of the time for which they were demised to them, and wilfully and unlawfully holding possession of said lands after written demand for delivery of possession; that the reasonable rental value of said lands is $100 per year; that the defendants have not paid any rental for the year 1931.

He prayed for a writ of unlawful detainer, for judgment for possession, for $100 rent, and costs.

Bond was filed on March 5, 1932, and on the same day the appellees entered into and filed a bond that they would perform the judgment of the court.

The appellees answered, denying each of the allegations of the plaintiff's complaint, and alleging that the lands belonged to T. C. Tobias, and have belonged to him for many years, where he has lived in the peaceable possession of same, and is still in possession, and no one has ever claimed title or possession until this suit.

On April 18, appellant, B. T. Burkett, filed suit in the same court, alleging that he was the owner of the lands described in plaintiff's complaint, and that the appellees had conveyed the land to John Temple on April 14, 1926, and on April 3, 1931, Temple and wife had conveyed the lands to Burkett. He also alleged that the defendants were in possession of the premises.

The appellees answered Burkett's complaint, denying the allegations, and denying that they had conveyed the land to Temple. They further stated in the answer to Burkett's complaint that he gave to John Temple a mortgage, or what he understood was a mortgage, for an account due Temple for merchandise; that he had traded with Temple for many years, and had given him mortgages from year to year before this, and that Temple represented to him that this was a mortgage; that, while he had traded with Temple for many years, he went to him in the spring of 1927, and Temple told him he would have to get furnished elsewhere; that he had kept the lands described and lived on them and cultivated them, and no one had ever claimed any rights or title to them until Temple's suit was brought, and then Temple informed him that, instead of making a mortgage in 1926, he had made a deed; that it was not his intention to make a deed, and Temple had told him it was a mortgage; that Temple had died since he brought his suit, and that Burkett's complaint alleged that he bought the lands from Temple a year before Temple's death, and that the claim

was fraudulent and void; that the deed mentioned was a mortgage, was intended to be a mortgage, and was so understood by him, and was so represented by Temple; that five years has run without any payments being made on said indebtedness, and that defendant pleads the statute of limitations of five years, and asks that said deed be held as a mortgage, and set aside and held for naught.

There was a prayer also that the case of Burkett be consolidated and tried with the case of Temple, and both complaints be dismissed.

The case brought by Temple was, after his death, revived in the name of Susie B. Temple. Appellants filed motion to transfer to equity, which was overruled, and the parties announced ready for trial.

There was a verdict and judgment for defendants, and the case is here on appeal.

It will be seen from the pleadings that Temple deeded the place to Burkett on April 3, 1931. Temple's suit was begun March 4, 1932, not quite a year after the deed.

The undisputed evidence shows that Burkett purchased the lands while the appellees were in possession, occupying the place as a homestead, as they had for many years.

S. M. Burkett, the father of appellant, testified that he bought the lands in the fall of 1930 for his son; that Mr. Temple furnished him an abstract; that Temple dealt with witness as agent for his son, and that, after he got the abstract, he paid $100, and that his son gave five notes for the rest of the purchase money. He introduced the deed from Temple, which was a warranty deed, retaining a vendor's lien for the payment of $430.16 unpaid purchase money; that the notes were afterward paid off. He testified that he knew nothing about Tobias claiming the lands; all he had was the abstract. He said Tobias told him that he signed a paper, but that he was signing for something to eat. This conversation was after the purchase by Burkett.

He further testified that both he and his son knew that Tobias was living on the land, but they went by the

abstract. Tobias was notified as soon as his son purchased the land. Tobias refused to give possession. He did not know that Temple owned the land until he saw the abstract. Tobias was in possession, but Temple told Burkett he had rented it to Tobias.

It was agreed that Temple was dead, and that Ezell, who acknowledged the deed, is also dead.

It will be seen from the above evidence that Burkett knew at the time he purchased the lands that the appellees were in actual possession, and he therefore purchased with notice of appellees' equities, and is bound thereby.

In a somewhat similar case, where there was a party in possession, a purchase was made, although the purchaser did not have actual notice of the occupancy of the place, and this court said:

"She purchased without any actual notice of appellee's occupancy, and appellee did not place a deed of record until after the sale to Mrs. Thalheimer. But she was informed by Smith that he had previously sold forty acres to appellee, and when she purchased appellee was in actual, open and visible possession of eight acres of the land which Smith conveyed to her. Such possession was equivalent to actual notice of the title, rights or equities of the occupant." *Thalheimer* v. *Lockert,* 76 Ark. 25, 88 S. W. 591.

Burkett, the purchaser, with appellees in possession of the lands purchased and holding adversely, acquired no greater title than Temple had. He was not an innocent purchaser. *Crawley* v. *Neal,* 152 Ark. 232, 238 S. W. 1054; *Naill* v. *Kirby,* 162 Ark. 140, 257 S. W. 735; *Reed* v. *Ziff Lodge No. 119, Order of Masons,* 175 Ark. 979, 1 S. W. (2d) 1000; *Midland Savings & Loan Company* v. *Brooks,* 177 Ark. 470, 6 S. W. (2d) 828.

Whatever rights Burkett acquired by his purchase depended upon the rights of Temple, and, if Temple did not have title to the property, Burkett did not have, because Tobias' occupancy of the premises was notice to Burkett of whatever rights and equities Tobias had.

Appellants contend that the court should have given the peremptory instruction for possession of the property, or should, under the undisputed testimony, have declared a lien upon the property, and cites and relies on the case of *Sturdivant* v. *McCorley,* 83 Ark. 278, 103 S. W. 732. It is insisted that that case is conclusive of all the questions involved here.

That case was in chancery court, and the undisputed evidence showed that the son borrowed money from his father and gave him an absolute deed to the land, under an oral promise from his father that he would reconvey so soon as the money was paid. The court held that, as no time was fixed for the payment of the money, it was due on demand, and the statute of limitations began to run immediately; but it also held that the title to the land was in the grantee, and that he had a right to bring an action at law to recover the possession, and, as the deed was absolute in form without written defeasance, the defendant could not show the parol agreement to reconvey; and, as the defendant had not held the land adversely for more than seven years, the grantee or his heirs could recover possession, unless the defendant set up an equitable defense that the deed was in equity a mortgage. The court also held that when he did this he would be met by the equitable principle that he who asked equity must do equity, and that the court would interfere only on condition that the debt be treated as a valid lien on the land; that the statute of limitations as to mortgages did not apply to equitable mortgages, evidenced by absolute deeds without any written defeasance.

This court has repeatedly held that, when a deed, absolute in form, was given as security for debts, the statute of limitations as to mortgages does not apply, and that, when suit is brought for the possession of the land by the grantee, the grantor cannot show that the deed was intended and was in fact a mortgage to secure debt, and defeat the grantee's action, by pleading the statute of limitations. In other words, he cannot defeat the action without paying the debt.

This doctrine seems to be supported by the weight of authority, but, so far as we have been able to discover, all the cases hold that this is because the grantee has title to the land.

In this case Temple brought suit claiming to be the owner of the land and entitled to possession and rent for the year 1931. He claimed that he was the owner and had title under the deed from Tobias and wife, dated April 14, 1926. He, however, deeded the land to Burkett on April 3, 1931, and the suit was not brought until March 4, 1932, nearly a year after he had conveyed the land to Burkett and been paid for it, and he had no title or interest in the land at all at the time he brought suit.

According to the undisputed testimony in this case, it was not the intention of the parties to take a deed absolute in form for the purpose of securing indebtedness, but that the deed was acquired by Temple fraudulently, and that he told Tobias at the time that it was a mortgage.

If there had been a deed for the purpose of securing a debt, and it had been the agreement and understanding that it was for this purpose, then the cases referred to by appellant would apply. But, if the evidence of appellees is true, this deed was procured by fraud, and was absolutely void. It is only where the parties agree to make a deed to secure a debt that it will constitute an equitable mortgage.

In the motion to transfer, made by the appellants, they did not claim that the instrument was a mortgage, but said that the answer in the consolidated cause stated grounds of defense cognizable only in equity, and that, in substance and effect the answer asked that the deed executed by defendants be reformed to read as a mortgage.

This was a suit in unlawful detainer for the possession of property and rent, and this court has many times held that a defendant may set up or plead all the defenses he may have, both legal and equitable. The defendant in this case alleged that he did not give a deed to Temple, that it was never intended that he give a deed, and that Temple himself said that it was a mortgage, and his

prayer was that both complaints be dismissed and the title vested in him. That is, his contention was that the deed relied on by Temple was void, and this was a legal defense to plaintiff's cause of action, a defense in a court of law, as well as in a court of equity.

If the evidence of appellee is true, Temple could not fraudulently procure a deed, and then, when the deed was held invalid, take advantage of his own wrong and have it declared a mortgage.

Appellant's contention all the way through the lawsuit was that it was not a mortgage, but a deed. Certainly there was no equitable mortgage as is discussed in the case of *Sturdivant* v. *McCorley, supra.*

Under the pleadings in the case, it was not contended by appellants that Tobias owed anything, but it was contended that the property did not belong to him because he had conveyed it.

If there had been a mortgage, the right to foreclose would have been barred when the debt was barred.

Appellant calls attention to some other cases which are, in effect, the same as *Sturdivant* v. *McCorley, supra,* but in all of them that we have examined, they were discussing deeds intended as mortgages.

Temple could not have had any intention that the deed should be a mortgage, but he intended it as an absolute deed, and actually conveyed the lands to Burkett, nearly a year before the beginning of the suit, and, so far as the evidence shows, never at any time said anything to Tobias about conveying it.

Therefore, under the evidence, there can be no conclusion other than that Temple did not take this deed to secure a debt, but to acquire title to the lands.

Appellant requested the court to instruct the jury in effect that, if Tobias signed the instrument believing it to be a mortgage, its verdict would be for the defendant for possession of the land, subject to a lien of $1,477, with interest, to be enforced by appropriate orders of the court.

The court modified this instruction by adding the following: "unless you further find that the statute of limitations has run against plaintiffs, Temple and Burkett, as defined in other instructions given in this case."

It is contended that this modification by the court was error because it has no application under this type of mortgage. As we have already said, appellants contended that this was a deed conveying the land to them, not intended as a mortgage, and, according to appellees' testimony and the finding of the jury, the deed was void, and was not an equitable mortgage.

Therefore the instruction requested by appellants was erroneous, and there was no error in the modification by the court.

The court, at the request of the defendants, gave the following instruction: "The jury is instructed that the plaintiff must recover upon the strength of his own title and not on the weakness of the title of the defendant, and if you believe from the evidence that the plaintiff has failed to establish a good title within himself, then he cannot recover in this action, and you should find for defendant."

Appellants' objection to this instruction was that the undisputed evidence established plaintiff's muniments of title, and that the burden was on the defendants. But the court gave instruction No. 3 at the request of appellants, which was as follows: "If you find from all the evidence that the deed made by the defendants to plaintiff in 1926 was intended as a mortgage and the defendants signed it under that belief and understanding, then you will find the title to the lands in controversy in Tom Tobias, regardless of any amount that may be shown he owes plaintiff."

There was no conflict between these instructions, and instruction No. 1, given at the request of appellees, is a correct statement of the law.

Appellants also objected to instruction No. 3, given at the request of the appellees, which told the jury that, if the deed was intended as a mortgage, and the defendants

signed it under that belief and understanding, they would then find the title to the lands in controversy in Tobias, regardless of any amount that he might owe. This instruction, we think, is a correct statement of the law. If appellee thought he was signing a mortgage, but, by reason of the false and fraudulent representations by Temple, he was induced to sign a deed instead of a mortgage, the deed would be void, and the appellants would not be entitled to recover.

Temple could not recover in this case in any event, because the undisputed evidence shows that, even if the deed to him had been valid, he had conveyed the land and had no interest whatever in it.

Appellants also object to instruction No. 4, given at the request of the appellees, because they say it tells the jury that defendants may recover if they held the lands adversely for more than five years after the deed. The instruction tells the jury, if it was executed as a mortgage, then the statute would begin to run from the date of the alleged deed. They object to the instruction also because they say it disregards their theory that the instrument was a mortgage given to secure a current account, and was not barred for that reason.

In the first place, that was not the theory of the appellants. Their theory was that it was not a mortgage; that it was a deed, and that it was intended to be and was executed as a deed.

As to whether the deed was procured by fraud, and as to whether the debt was barred by the limitations, were questions of fact submitted to the jury at the request of both parties, and the jury's verdict on these matters is conclusive.

We find no error, and the judgment is affirmed.