BEASLEY *v.* BOREN.

4-7968                                   197 S. W. 2d 287

Opinion delivered October 28, 1946.

Rehearing denied December 2, 1946.

*Robert D. Lee, House, Moses & Holmes* and *Horace Jewell,* for appellant.

*Rose, Dobyns, Meek & House,* for appellee.

ROBINS, J. This suit was instituted on July 9, 1945, by appellees, a partnership, to obtain possession of a storeroom at 810 Main street in the city of Little Rock, Arkansas, which appellees alleged was being unlawfully held by appellant, and to recover damages for the alleged unlawful detention thereof. Bond for appellees, as required by law in ''unlawful detainer'' proceedings, having been filed, cross-bond, to enable him to retain possession pending trial, was made by appellant.

The substance of appellant's answer was that on August 6, 1941, he entered into a written contract with the owner (at that time) of the property, by which the building was leased to him for a term of two years, expiring on September 1, 1943; that this contract contained a provision which entitled appellant to have this lease renewed for three additional years, and that, in accordance with this provision, the said lease had been so renewed at an agreed rental of $85 per month, which sum had thereafter, up to July 1, 1945, been regularly

paid by appellant and accepted by the lessor, and also by appellees after they had purchased the property.

By an amendment to their complaint appellees asked damages in the sum of $10,350, alleged to have been suffered by them as a result of appellant's detention of the property. An answer denying the allegations of this amendment was filed by appellant.

The lower court directed a verdict in favor of appellees for possession of the building and submitted the question of amount of damages and rent due appellees to the jury, who returned a verdict in favor of appellees for a total of $7,943.31. From judgment entered on these verdicts appellant prosecutes this appeal.

Appellant's principal grounds for reversal are: First, that the trial court erred in refusing to admit testimony offered by appellant tending to establish his contention that the term of the lease had been extended by the agreement for renewal; and, second, that the verdict for damages was not supported by substantial testimony.

## I.

The written lease entered into by the former owner of the property and appellant set forth that it was for a term of two years, ending on September 1, 1943, provided for payment by lessee of $50 per month rent and contained the following clauses:

"9. This lease is not subject to any renewal or extension of the term hereof, except such as may be created or recognized by the acceptance by the lessor of a rental or rentals extending beyond the said term, the tenancy so created or recognized in favor of the lessee after the said term being, however, limited to, and deemed to be a tenancy only for the respective periods of time for which rentals have been so accepted. Upon the expiration of the term fixed in this lease, or upon the expiration of the most recent tenancy by acceptance of rental, the lessee will, without notice, quit and surrender the possession of said premises, and in as good condition as reasonable use and natural wear and decay thereof will permit.

"12. It is hereby understood and agreed that this lease shall be subject to a renewal of three years, the rate of rent to be agreed upon by the lessor and the lessee at least 90 days prior to the expiration of this lease. Clause No. 9 of this lease shall remain in full effect with the exception of that portion which states that this lease shall not be subject to any renewal or extension of the term thereof."

Appellant offered to show by the testimony of himself and other witnesses that, after he learned he was to be called into military service and more than ninety days before the expiration of the term fixed in the written lease, appellant made an oral agreement with the authorized agent of the owner of the building to the effect that the lease should be renewed for three years at a monthly rental of $85; that this agent promised to give him a letter to evidence the extension, and that after this agreement was made, and after September 1, 1943, appellant, relying on it, expended $823 for repairs on the building, which he would not have done had the term of the lease not been thus extended, and further, that in accordance with the agreement, appellant, and appellant's wife, after appellant entered the army, paid the agreed rental of $85 each month to Fidelity Realty Company, agent of appellees' vendor, which also acted as agent of appellees after they bought the property on October 2, 1944. Appellees did not deny payment of the increased rental after September 1, 1943, up until July 1, 1945, but insisted that during this period the renting was on a month to month basis.

The lower court, proceeding on the theory that the provision in the contract for an extension was meaningless and ineffective, and that the proffered testimony was an attempt to establish a new oral lease for a term of more than one year, in violation of the statute of frauds (§ 6059, Pope's Digest), refused to permit its introduction.

At the threshold of a consideration of the rights of the parties to this litigation, it must be recognized that appellees, who purchased the property while appellant

was in possession, were bound by the provisions of any valid agreement as to lease which appellant had with appellees' vendor. 32 Am. Jur. 41; *Sisk* v. *Almon,* 34 Ark. 391; *Atkinson* v. *Ward,* 47 Ark. 533, 2 S. W. 77; *Sproull* v. *Miles,* 82 Ark. 455, 102 S. W. 204; *Temple* v. *Tobias,* 186 Ark. 851, 56 S. W. 2d 585; *Prince* v. *Alford,* 173 Ark. 633, 293 S. W. 36; *Churchill* v. *Herrington,* 198 Ark. 22. 127 S. W. 2d 123; *Cline* v. *Smith,* 205 Ark. 136, 167 S. W. 2d 872.

The provision in the lease for its renewal was indefinite because it failed to fix the rental to be paid during the additional term. But, because a contract is uncertain in its terms, it does not necessarily follow that it is a nullity. The parties to a contract may, by their mutual actions in carrying it out, furnish an index to its meaning, which the language thereof fails to do. After all, the written instrument is but an evidence of what the signers thereof propose to bind themselves to do, and when, by their conduct in carrying out the agreement, both of the parties to the contract demonstrate an intention to heal an uncertainty in the contract, the courts will generally adopt this practical construction. *Kahn* v. *Metz,* 88 Ark. 363, 114 S. W. 911; *Edgar Lumber Company* v. *Cornie Stave Co.,* 95 Ark. 449, 130 S. W. 452; *Keopple* v. *National Wagonstock Co.,* 104 Ark. 466, 149 S. W. 75; *Hastings Industrial Co.* v. *Copeland,* 114 Ark. 415, 169 S. W. 1185; *Webster* v. *Telle,* 176 Ark. 1149, 6 S. W. 2d 28; *Sydeman Bros., Inc.,* v. *Whitlow,* 186 Ark. 937, 56 S. W. 2d 1020; *Continental Insurance Company* v. *Harris,* 190 Ark. 1110, 83 S. W. 2d 841; *Stephens* v. *Cherry Hill Special School District No. 10,* 206 Ark. 832, 177 S. W. 2d 722.

"An uncertain agreement may be so supplemented by subsequent acts, agreements, or declarations of the parties as to make it certain and valid. The acts of practical construction placed upon a contract by the parties thereto are binding and may be resorted to to relieve it from doubt and uncertainty. *The objection of indefiniteness may be* obviated by performance and acceptance of performance." (Emphasis ours.) 12 Am. Jur. 558.

In the lease involved here, the parties stipulated that it might be renewed for an additional three years at a rental to be agreed upon by the parties. The terms of this stipulation did not call for the execution of a new lease, nor was there any provision therein as to how the agreement for the new rental should be evidenced. Dealing with a question somewhat similar to that here involved, Judge HART, in the case of *Neal* v. *Harris,* 140 Ark. 619, 216 S. W. 6, said: ''So in the present case no new contract was provided for in the lease itself. The formal covenant of renewal usually provides specifically for the execution of a new lease. The extended term in the lease under consideration was fixed by and was a part of the original lease. When the lessee exercised his option and gave the required notice the parties were bound for the two additional years. No question as to the application of the statute of frauds arises, and the court was wrong in so holding. If the lessee did not give a notice such as the law would enforce, his estate terminated at the end of the first period of one year; if he did give such a notice, it would continue to the end of the second period of two years. In either event, the lease itself created and defined the term and the statute of frauds had nothing to do with the case. *McClelland* v. *Rush,* 150 Penn. St. 57, 24 Atl. 354, and the authorities above cited. This brings us to a consideration of the character of the notice. The lessee offered proof of the giving of a verbal notice of his intention to extend the lease to the lessor. There was no agreement contained in the lease as to how the lessee should exercise his option of extending the lease, whether orally or by writing. It might therefore be shown either way, the same as any other fact not required to be in writing. This view is supported by the case of *Bluthenthal* v. *Atkinson,* 93 Ark. 252, 124 S. W. 510.''

It is argued on behalf of appellees that since the stipulation in the original lease was for a *renewal* rather than an extension of the term it was necessary, in order to entitle appellant to the additional term, that a new lease be executed. In discussing a like contention, the court of appeals of Kentucky, in the case of *Kozy Theater*

*Company, et al.,* v. *Love, et al.,* 191 Ky. 595, 231 S. W. 249, said: "This court uniformly has recognized a technical distinction between a covenant to renew and a covenant to extend a lease, but has been just as consistent in holding that whether the privilege is to renew or extend depends upon the intention of the parties as shown by the entire lease and their interpretation thereof before the controversy arose, and that the mere, fact it is called a privilege to renew is not conclusive. . . . The contention that the verbal assent of Utterback to the "renewal" construed and called by them a continuance of the contract for an additional term is within the statute of frauds, and therefore without binding effect, is based upon the theory that there could be no renewal except by the execution of a new lease. But obviously there is no merit in this contention, upon the construction given the contract by the parties, and therefore adopted by us as the true one, that a new lease was not required, since the lessees, by giving notice and holding over, hold under the original contract, and not the notice; and the giving of the notice is not an agreement within the statute of frauds. 16 R. C. L. 885."

We conclude that the effect of the testimony which appellant offered, and which the lower court refused to admit, was to show that the parties to this lease had, by their words and by their actions, interpreted and made certain the indefinite provision as to the renewal. This testimony tended not to establish a new oral lease, but merely to show that the parties to the original lease had mutually invoked its provision for an additional term and that the uncertainty in this provision had been removed by the acts of the parties thereafter.

The lower court should have admitted this testimony and should have instructed the jury that, if appellant's version of the matter was found to be true, appellant was entitled to hold possession of the property for the additional three years after September 1, 1943.

## II.

The testimony introduced by appellees as to loss of profits which appellees thought they had suffered and

as to the additional cost of making changes in the building was not sufficiently definite to sustain the verdict of damages to appellees on these grounds, even if it should be held that such damages are recoverable in an action such as this.

There was introduced in evidence no such records or data as would sustain appellees' theory as to their loss of profits, and Mr. Boren's testimony as to what profits appellees would have earned from their business at the new location was at best a mere conjecture on his part.

In *Brockway* v. *Thomas*, 36 Ark. 518, this court held (headnote 4): "Evidence of loss of profits in the defendant's business by being deprived of a business stand by a writ of unlawful detainer is not admissible in proof of his damages sustained by the action." The same question was involved in the case of *Wakin* v. *Morgan*, 165 Ark. 234, 263 S. W. 783, where we said: "The court erred in its instructions in not confining the jury to the actual damages and in not telling the jury that they could not consider net profits as an element of damage."

Appellees' contractor, employed to make alterations in the building, testified that the additional cost of the work, due to appellant's detention of the building, would be $4,048, but in detailing how he arrived at this figure this witness gave items that totaled only $830. How he arrived at the sum of $4,048 as the additional amount the work of making alterations in this building would cost by reason of the delay is not shown by his testimony. This evidence was too indefinite and partook too much of the nature of a guess to furnish a basis for a verdict.

The judgment of the lower court is reversed, and the cause is remanded with directions to the lower court to grant appellant a new trial and for further proceedings not inconsistent with this opinion.