ESTES *v*. LAMB & COMPANY.

Opinion delivered June 27, 1921.

1. SALES—PAROL RESERVATION OF TITLE.—A parol reservation of title in personal property, made at the time of its sale, is valid, and is effectual as against a *bona fide* purchaser for value, to the same extent as such a reservation in a written contract.

2. SALES—CONDITIONAL SALE—EFFECT OF EXECUTING NOTE.—The giving of a note to represent the purchase price, with sureties, does

not change a verbal contract which would otherwise be one for a conditional sale with reservation of title to one of absolute sale.

3.  SALES—CONDITIONAL SALE.—While the buyer in a conditional sale acquires an interest in the property which he may sell or mortgage, without the seller's consent, the latter's right to recover the property if the purchase money was not paid could not be prejudiced by such sale or mortgage.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed.

### STATEMENT OF FACTS.

Appellees brought this suit in equity against appellants to obtain judgment for an account due them and for the foreclosure of a chattel mortgage given to secure the same.

In their complaint they alleged that Albert Estes executed a chattel mortgage on two mules to secure an account for merchandise and supplies to be furnished him in 1919; that subsequently Estes sold the mules to J. A. Coward; that J. A. Coward sold the mules to J. H. Coward, and that said mules are now in the possession of J. H. Coward.

Appellants defended the suit on the ground that, prior to the execution of the mortgage by Estes to appellees, J. A. Coward had sold the mules to Estes and had reserved title in them until they were paid for.

According to the testimony of appellees, they constitute a mercantile firm at Bono, Ark., and on March 11, 1919, Albert Estes executed a mortgage on the mules in controversy to them for supplies to be furnished him in making a crop. Estes did not inform them that Coward had sold him the mules and had reserved title in himself until they were paid for. On the other hand, Albert Estes testified that, at the time he executed the mortgage, he told appellees that he had purchased the mules from Coward, and that Coward had retained title in them until they were paid for. and that he had paid nothing toward the purchase price thereof.

Both Albert Estes and J. A. Coward testified in regard to the execution of the contract, and their testimony is in all essential respects the same. According to their

testimony, J. A. Coward sold to Albert Estes the mules in controversy, a wagon, harness and tools for $730 and retained title in the property until the purchase price was paid. It was a part of the agreement that Estes should execute a note for the purchase price to be signed by Arthur Smith and Joe Smith.

Pursuant to the agreement, in a few days Estes brought back and delivered to Coward his note for the purchase price of the property signed by Joe and Arthur Smith. The note is as follows:

"$730.00                                1-22-1919.

"Ten months after date, we promise to pay to the order of

J. A. Coward,

seven hundred and thirty dollars, for value received, negotiable and payable without defalcation or discount and with interest from date at the rate of ten per cent. per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest.

"Albert Estes, A. D. Smith, Joe Smith."

Arthur Smith was present when the contract was made and corroborated the testimony of Coward and Estes. He stated that he and his brother would not have signed the note if Coward had not retained title in the property until the purchase price was paid. Estes was unable to pay the note when it became due, and by agreement with Coward, turned over to him the mules in question. J. A. Coward then sold the mules to his brother, J. H. Coward, who had possession of them at the time appellees sought to foreclose their mortgage and recover possession of them for that purpose.

On April 25, 1919, J. A. Coward transferred the note copied above as collateral security to the Jonesboro Trust Company.

The chancellor found the issues in favor of appellees, and a decree was entered in their favor for the amount sued for and for a foreclosure of their mortgage on the mules.

The case is here on appeal.

*H. W. Applegate,* for appellants.

1. The right of a vendor to retain title by verbal contract, and if he so desires to take additional security, has long been well established. 47 Ark. 365; 68 *Id.* 230 (234); 48 *Id.* 160; 108 *Id.* 442 (446); 123 *Id.* 132.

2. The proof is conclusive that J. B. Lamb & Company took their mortgage with notice that J. A. Coward had retained and still owned the title to the mules and eliminates any doubt of the fact. Lamb & Company knew of the mortgage and took with notice of it and subject to it. 11 C. J. 522; 5 A. L. R. 391; 20 R. C. L. 346. Lamb & Company had plenty of time to make inquiry, because the note and mortgage which they took from Albert Edwards was not for value immediately paid but was for supplies to be furnished from time to time in the future.

It is true that where one purchases personal property and the vendor retains the title until the purchase money is paid, the vendee has the right to sell or mortgage his equity, but here the vendee, Estes, never had any equity, as he never paid anything upon the purchase price of the mules. But it is also true that vendor's right to recover the property, if the purchase money is not paid, is not prejudiced by sale or mortgage. 108 Ark. 442. The assignment as collateral security of a note given as additional security for the purchase price of property conditionally sold does not affect the right of a seller to take possession of his property in case of default or failure of the payment of the purchase price. 38 Ark. 285; 50 *Id.* 256; 29 A. & E. Ann. Cases (1916 A) 265; 70 Miss. 649; 12 So. Rep. 857; 48 Ark. 160. The law of this case is plain and well established and the court erred in its declarations of law.

*Sloan & Sloan,* for appellees.

1. Since a note was given for the purchase money, a contract for the retention of title by parol can not be established. An oral conditional sale is valid in Arkansas, but it is only when the entire transaction was oral.

If the transaction be reduced to writing, other conditions can not be shown by parol evidence. 6 Ind. 300; 29 Ark. 438.

2. After having indorsed and transferred the purchase money note as collateral security to the bank, Coward had no authority to either accept payment or to discharge it by retaking the property. Jones on Coll. Sec. (3 ed.), § 89; 41 Ark. 419; 94 *Id.* 387; 136 Ark. 215; 127 *Id.* 545; 120 *Id.* 616; 111 *Id.* 263; 105 *Id.* 152; 118 *Id.* 316; 113 *Id.* 585; 72 Miss. 608; 18 So. Rep. 364; 38 Ark. 285.

3. Estes, after having executed the mortgage to Lamb & Company, did not have the right to contract with Coward for a discharge of the purchase money note by return of the property and the payment of one hundred dollars. The vendee in a conditional sale contract acquires an interest in the property sold that he may either sell or mortgage subject to the prior interests of the conditional vendor. 108 Ark. 442; 163 S. W. Rep. 157; 97 *Id.* 432. See, also, 117 Ga. 919; 43 S. E. Rep. 982.

4. The transfer of the note as collateral security by Coward to the bank constituted an election on his part to affirm the sale and treat the debt as absolute. 66 Ark. 240; 65 Wash. 650; 118 Pac. 817; 37 L. R. A. (N. S.) 71.

5. Coward is estopped, after having indorsed the note to the bank as collateral security, to assert any alleged rights under an alleged oral retention of title, and this was a fraud on the bank. 177 Pac. 340; 3 A. L. Rep. 235, 239; 37 L. R. A. (N. S.) 71; 118 Pac. 817.

The lower court was unquestionably right in holding that Estes and Coward, who had parted with their interest in the subject-matter, could not enter into an agreement destructive of the rights of their transferees.

HART, J. (after stating the facts). Following the rule of the common law, this court has held that a parol reservation of title in personal property made at the time of the sale is valid, and that such oral reservation of title is effectual as against a *bona fide* purchaser for value

to the same extent as such a reservation in a written contract. *Jones* v. *Bank of Commerce,* 131 Ark. 362. To the same effect see *Segrist* v. *Crabtree,* 131 U. S. 287.

Counsel for appellees recognize this to be the rule, but claim that the rule is not applicable in the present case because, at the time the agreement for the oral reservation of title was made, it was also agreed that the purchaser should execute his note for the purchase price, and that the note executed pursuant to the agreement is a plain note of hand signed by the purchaser with two sureties.

It is generally held that the giving of a note to represent the purchase price does not change a contract which would otherwise be one for a conditional sale to one of absolute sale. *International Harvester Co.* v. *Pott,* 32 S. D. 82, Ann. Cas. 1916 A, p. 327 and note at p. 331.

In *Bierce* v. *Hutchins,* 205 U. S. 340, it was expressly held that the taking of notes for the purchase price and the taking of collateral security did not in any way qualify the conditional sale features of such contracts. In that case the court said: ''Parties can agree to pay the value of goods upon what consideration they please, * * * and when a purchaser has possession and the right to gain the title by payment he can not complain of a bargain by which he binds himself to pay and is not to get the title until he does.''

The giving of a promissory note for debt is no payment unless by agreement of the parties the notes are taken in payment of the debt. *Triplett* v. *Mansur-Tebbetts Implement Co.,* 68 Ark. 230. In that case the court held that where goods were sold on condition that the title shall remain in the vendor until the purchase notes are paid, the execution of renewal notes for the debt is not a payment unless by agreement of the parties the notes are taken as such.

It is true that in all the cases above cited the contracts of conditional sale were in writing, but the courts do not seem to have made any point of that fact. The

cases all turn on the rule that the giving of the promissory note does not discharge the debt for which it was given unless such be the express agreement of the parties. It only operates to extend the time of payment until the note is due. Our own court has not recognized any difference in this respect between oral and written contracts for the reservation of title for the conditional sale of personal property.

In *Rex Buggy Co.* v. *Ross,* 80 Ark. 388, Ross bought a carload of buggies from the Rex Buggy Company with the understanding that the title to the property should remain in the vendor until the purchase price was paid. Ross agreed to execute his promissory note for the price of the buggies upon receipt thereof payable in four months after date. The court held that, upon executing the notes, he was entitled to the possession of the buggies and to retail them in due course of trade until he failed to comply with the conditions of the sale to him. The statement of facts does not show whether the contract for the conditional sale of the buggies was a written or oral one.

The undisputed evidence establishes the oral contract of sale in the instant case with the reservation of title in Coward until the property was paid for. The undisputed evidence also shows that Estes did not pay for the mules and by agreement turned them back to Coward. The evidence also shows that the agreement to execute the note was made at the same time the oral contract for the conditional sale was made.

The mortgage to appellee was executed subsequent to the contract of conditional sale between Coward and Estes. Estes acquired an interest in the property which he could sell or mortgage to appellees without the consent of Coward, but Coward's right to recover the property if the purchase price was not paid could not be prejudiced by such sale or mortgage. *Clinton* v. *Ross.* 108 Ark. 442. Neither was the right of Coward affected by the fact that he transferred to the bank as collateral

security the note given by Estes for the purchase price of the property. The reservation of title in the instant case appears from the oral contract for the conditional sale, but not in the purchase money notes. In such cases the seller may transfer the notes as collateral security and on default of the buyer retake the property. The reason is, he is interested in the payment of the notes so as to relieve him from liability as indorser and he therefore has the right to retake possession of the property. 35 Cyc. 702; *McDonald Automobile Co.* v. *Bicknell* (Tenn.), Ann. Cas. 1916 A, 265, and *McPhearson* v. *Acme Lumber Co.,* 70 Miss. 649, 12 So. R. 857.

No complaint is made that a judgment is rendered in favor of appellees against Estes for the amount he owes them.

From the views we have expressed, it follows that the chancellor erred in rendering a decree for appellees, and for that error the decree must be reversed and the cause will be remanded with directions to enter a decree in favor of J. H. Coward for the possession of the property and for further proceedings not inconsistent with this opinion.