KEITH *v.* McGREGOR.

Opinion delivered March 17, 1924.

1.  LANDLORD AND TENANT—CONSTRUCTION OF RENEWAL OPTION.—A lease for a year, which reserved an annual rental to be paid on a certain day "of each year during the contract," and which stipulated for renewal of the lease "for a period of one, two, three or four years from the expiration of this contract," did not contemplate a formal renewal at the end of each yearly period, but merely gave the lessee the option to extend the lease by holding over and paying the annual rental.

2.  LANDLORD AND TENANT—ASSIGNMENT OF LEASE.—A lease for a year, with option of renewal, which contains no provision against assignment or requiring the landlord's consent, may be assigned without the landlord's consent.

3.  LANDLORD AND TENANT.—LIABILITY OF ASSIGNEE OF LEASE.—The assignee of a lease is in privity of estate, but not of contract, with the lessor, and is only liable on covenants which run with the land, such as covenants for rent, to pay taxes, and to yield up the premises in good repair.

4.  LANDLORD AND TENANT—LIABILITY OF LESSEE AFTER ASSIGNMENT OF LEASE.—The fact that a lessor of land accepted rents from the lessee's assignee, with knowledge of the assignment, did not release the lessee from liability for the payment of the rent when due or for building a fence at expiration of the lease.

5.  LANDLORD AND TENANT—RELEASE OF LESSEE.—Where a lessor, after his lessee had assigned the lease without his consent, accepted from the assignee a note for the final installment of rent due under the lease, he will be held to have accepted the assignee as tenant in lieu of the lessee, and to have released the latter from liability for such rent.

6.  LANDLORD AND TENANT—LIABILITY OF LESSEE TO BUILD FENCE—SET-OFF.—A lessee, liable for construction of a fence at the expiration of the lease, was not entitled to set-off against such

liability buildings constructed on the premises by him before assignment, where he sold such buildings to his assignee and they were purchased by the lessor at a bankrupt sale of the assignee's assets.

Appeal from Woodruff Circuit Court, Southern District; *E. D. Robertson,* Judge; affirmed.

*Roy D. Campbell,* for appellant.

1. The proof is undisputed, and appellee admits, that Keith did not renew the contract after the expiration of the first year. He therefore could not be held liable for rent accrued after the first year.

2. Appellee, by his conduct in accepting rent each year under the contract, consented to the assignment thereof, and is estopped to maintain this action. 97 Ark. 588. 10 R. C. L. 675; 140 Ark. 108; 131 Ark. 77; 147 Ark. 561.

3. If appellant is to be held liable for any part of the rent after the first year, he was certainly liable to the value of the building left on the premises at the termination of the contract, under the provision therein giving him the right to remove any buildings, etc., constructed by him. 136 Ark. 14.

*Ross Mathis,* for appellees.

1. The assignment of a lease by the lessee does not relieve him of his obligation under the lease, and acceptance of rent from the assignee by the lessor does not amount to a substitution of the assignee as a tenant nor to a release of the original tenant. 24 Cyc., 996, and notes; 108 Ark. 513; 127 Ark. 466; L. R. A. (N. S.) 1917C, p. 901; 52 L. R. A. (N. S.), 968; 973, note (b), 975, note 2; 24 Cyc. 1372; 5 Elliott on Contracts, par. 4573, tit. "Leases"; 16 R. C. L. par. 346, and notes.

2. The acceptance of a note from the assignee did not have the effect of a payment, as there was no agreement that the note should extinguish the debt. 2 Ark. 209; 84 Ark. 218; 149 Ark. 369; 50 Ark. 261; 49 Ark. 508; 45 Ark. 313; 48 Ark. 267; 111 Ark. 529.

WOOD, J. On the 22d day of June, 1917, J. D. McGregor, as manager of the McGregor estate, entered

into a lease contract with J. L. Keith whereby McGregor leased to Keith about ten acres of land for a period of one year from the 16th day of September, 1917, for an annual rental of $100. The lease specified that the rental was to be paid "on the 17th day of September of each year during the contract herein stipulated." The contract stipulated "that the party of the second part may renew said lease contract from year to year for a period of one, two, three or four years from the expiration of this contract." The purpose of the contract was to lease, as specified therein, the ground to Keith for a mill-site, and it was provided that, at the expiration of the contract, Keith should restore any and all cross-fences torn away by him, and Keith was to have the right to erect any and all buildings and equipment for the proper operation of his plant, and, at the expiration of the contract or any renewal period, he was to have the right to remove any improvements placed by him on the ground. It was also provided that Keith, at the expiration of the lease contract, and at his own expense, should inclose the leased ground with a "hog-proof" fence. Soon after the lease contract was executed Keith, who was manager of the Cotton Plant Stave Company (hereafter called company), assigned his contract to that company. During the first year, while the company was operating under the contract, they erected five buildings on the leased property, which remained on the property. After the first year Keith severed his connection with the company and went into the stave business on his own account. In the years 1918, 1919 and 1920, on the days when the annual rental became due, Hines, the manager of the company, mailed checks to McGregor for the sum of $100, the annual rental. In the year 1921 Hines wrote McGregor that he was unable to pay the rent for the year 1922, and offered to send him a ninety-day note for the rent, which note McGregor accepted. The note was not paid, as the company had become insolvent and had gone into bankruptcy. The buildings on the property were sold by the receiver in bankruptcy, at public sale,

and were purchased by McGregor. The first cost of the buildings was around $1,500. The present value of them was $300. The buildings were sold by Keith to the company. When Keith assigned his contract to the company, he did not consult McGregor about it—simply transferred the lease and got credit for the $100 he had already paid, and the company, under the lease, held the property for the full five years. Keith did not build the fence called for by the contract. McGregor built this fence at a cost of $145. McGregor knew, at the time he received the checks in payment of the annual rentals, that Hines was at the head of the company, and knew that Keith was in business for himself on a separate tract of ground. McGregor knew, when he accepted the checks from Hines, that the company had succeeded to Keith's rights, and did not raise any objection. McGregor did not look to Hines for the payment of the annual rents while the company was in possession under the lease, but accepted the payments from the company, and accepted Hines' note for the payment of the last annual rental.

This action was instituted by McGregor and others against Keith to recover the sum of $100 annual rent for the year 1922, and also to recover the cost of rebuilding the fence in the alleged sum of $300. Keith denied liability.

The above are substantially the facts upon which the court instructed the jury as follows: "You are instructed that the plaintiff cannot recover of defendant for rent in this action, so this leaves the claim as to the fence only to be determined by you. So, if you find that the defendant, under the contract, failed to build the fence, you will find for plaintiff the reasonable cost of building the same." Both plaintiff and defendant objected and excepted to the ruling of the court in giving the above instruction.

Keith contended that the acceptance by McGregor from the company of the annual rentals for a period of four years—three years in cash and a note for the last year's rental—estopped McGregor from recovering in

this action. Keith presented several prayers for instructions which, if granted, would have submitted his contention to the jury. These prayers the court refused, to which rulings Keith duly excepted. The jury returned a verdict in favor of the plaintiff in the sum of $145. Judgment was entered in plaintiff's favor for that sum, from which is this appeal.

1. When all of the provisions of the lease contract under review are considered, it is clear that the parties did not contemplate a formal renewal of the lease at the end of each year period, but, on the contrary, it was the purpose of the parties to give the appellant the option to extend the lease for a period of five years by holding over and paying the annual rental on the 17th day of September of each year during the remainder of the full period mentioned in the contract. In *Neal* v. *Harris,* 140 Ark. 619, at page 624, we quoted from Underhill on Landlord and Tenants, vol. 2, p. 803, where, in discussing the difference between the extension of a lease and a renewal thereof, the learned author, among other things, said: "So, where a lease gives the lessee a renewal at his election, and he elects to continue, a present demise is created which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease should be executed. In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease. The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties. The reason for the presumption is the fact that the making of a new lease will involve trouble and expense, which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense."

In the same case we quoted from *Kramer* v. *Cook,* 7 Gray (Mass.) 550, where it is said: "The provision in the lease is not a mere covenant of the plaintiff for

renewal; no formal renewal was contemplated by the parties. The agreement itself is, as to the additional term, a lease *de futuro,* requiring only the lapse of the preceding term and the election of the defendant to become a lease *in praesenti.* All that is necessary to its validity is the fact of election.''

The construction of any lease contract, to be sure, depends upon its own language. The language of the contract under consideration brings it clearly within the rules above quoted in *Neal* v. *Harris.* It is nothing more nor less than a lease contract for a period of five years, provided the lessee, at the expiration of each year, elected to continue from year to year until the full contract period, and it was only necessary to manifest such election by holding over and paying the rent. The lease contract contains no provision against the assignment thereof by the lessee. Our statute does not prohibit, but, on the contrary, expressly authorizes, the assignment of such leases. Section 4866, C. & M. Digest. Therefore Keith had the right to assign the lease to the company, and the assignment to the company conferred upon it all the rights of Keith under the lease. 5 Elliott on Contracts, § 4574; *Hollander* v. *Central Metal & Supply Co.,* 109 Maryland 131; 71 Atl. 442; *Moreno* v. *Williams,* 30 Nevada 360.

The consent of the lessor was not necessary to the validity of the assignment. McGregor, the lessor, did not, in the lease contract, expressly make his consent a condition precedent to the validity of the assignment, and therefore he could not object to it. ''The assignee is in privity of estate, but not in privity of contract, with the lessor, and is only liable on covenants which run with the land, such as covenants for rent, to pay taxes, and yield up premises in good repair.'' 5 Elliott on Contracts, § 4574, and cases there cited. All express covenants in a lease contract binding the lessee to pay rent during the term ''inhere in the estate as a covenant real, and bind the assignee of the term, by reason of his privity of estate, to pay the rent accruing during his

ownership and possession of the estate; so that, after an assignment of the lease, the lessor has a double and several security for the payment of his rent, either or both of which he may pursue until satisfaction is obtained. Therefore the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment." *Taylor* v. *Debus,* 31 Ohio St. 468, at page 471; *Kanawha-Gauley Coal & Coke Co.* v. *Sharp,* 52 L. R. A. (N. S.), 968, and numerous cases cited in note 3(a) at page 971, and note 3(b) at page 973. In the case-note 3(b) to the above case it is said: "The lessee is liable to the lessor on an express covenant to pay rent, even though he had assigned the leasehold with the consent of the lessor, so long as there was not a specific release of liability." Numerous cases are cited in the text and in the case-note to *Kanawha-Gauley Coal & Coke Co.* v. *Sharp, supra,* to sustain the doctrine therein announced. This is in accord with the trend of our own decisions. *Evans* v. *McClure,* 108 Ark. 531; *Landsdell* v. *Woods,* 127 Ark. 466-469. See also, 24 Cyc., p. 1372; 5 Elliott on Contracts, §§ 4573 and 4574; 16 R. C. L., p. 846, § 346, and cases cited.

Now, applying the law to the facts, the fact that the assignee company paid to McGregor, the lessor, the rent for three years, which rent the latter accepted, knowing that the lessee Keith had assigned his lease to the company and had severed his connection therewith, and was doing a separate business on his own account on other land, would not release the appellant Keith from his covenant to pay the balance of the rent due, nor from his covenant to make repairs—to build the fence, and appellee would not be estopped from maintaining this action against the appellant both for the balance due on rent and for the cost of building the fence. McGregor swore, and his testimony is undisputed, that, while he accepted the checks from Hines, the manager of the company, for the three years payment of rents, he did not look to him for payment. These facts alone would not be sufficient

to relieve the appellant of the payment of the $100 balance due on the rent, nor estop the appellees from recovery thereof. But the appellee, McGregor, when the last annual payment became due, accepted the note of the company in payment thereof. By so doing the appellees must be held to have accepted the company as its tenant instead of the appellant. This act of McGregor was tantamount to releasing the appellant from the covenant to pay the balance of the rent and accepting the company in his stead. It had the effect, in law, to substitute the assignee and to release the lessee.

Learned counsel for the appellee cite many of our cases to the effect that the giving of a negotiable instrument does not extinguish the debt for which it is given, unless there is an agreement between the parties that the instrument shall have this effect, and that the check or note of a debtor taken by a creditor is not payment or satisfaction unless the parties agree that it shall have that effect. See *Estes* v. *Lamb & Co.,* 149 Ark. 369; *Daniels* v. *Gordy,* 84 Ark. 218; *Churchill* v. *Yeatman-Gray Co.,* 111 Ark. 529. But these cases are clearly distinguished from the facts of the case at bar, because here, as we view the evidence, the acceptance by the appellee of the note of the company for the balance of the rent due was tantamount to treating the balance of the rent due as the debt of the company, and the conduct of the appellees in this respect constituted a payment of that debt so far as the appellant was concerned. See cases in note 52 L. R. A. (N. S.), p. 974, note (c).

The fact is not disputed that the appellees rebuilt the fence at a cost of $145. The appellant cannot offset this amount *pro tanto* by the value of the buildings on the property, because he testified that he sold these buildings to the company, and they were purchased by McGregor from the one who bought them at the sale of the assets of the company in bankruptcy. It follows that there was no error in the rulings of the trial court, and its judgment is therefore affirmed, both on appeal and cross-appeal.