DURDEN v. HINTON.

4-3702

Opinion delivered February 18, 1935.

*Cravens, Cravens & Friedman,* for appellant.

*G. L. Grant* and *Thos. C. Pitts,* for appellee.

MEHAFFY, J. This action was commenced in the municipal court of the city of Fort Smith by the appellee to recover the sum of $300 claimed to be owing appellee by appellant for the rent of a farm. Judgment was rendered in the municipal court in favor of appellee, and the appellant prosecuted an appeal to the Sebastian Circuit Court, where a judgment was also rendered in favor of appellee and against the appellant in the sum of $300.

Appellee testified that she leased the farm to appellant, and introduced the following lease:

"Lease

"This indenture of lease made and entered into this 4th day of November, 1931, by and between Mrs. Robert Hinton, lessor, and R. O. Durden, lessee.

"Witnesseth, that the lessor for and in consideration of the covenants, agreements and stipulations hereinafter expressed, does hereby demise and lease unto lessee, the following described real property, to-wit:

"That certain farm belonging to the lessor and situated in the Fort Smith District of Sebastian County, Arkansas, lying between North Sixth Street and the Arkansas River, and bounded on the east by the R. O. Durden farm and on the west by the Cecil Newlan farm, and extending from said North 6th Street to the Arkansas River.

"To have and to hold the said premises unto the said lessee from on or before the first day of January, 1932, to the 31st day of December, 1932.

"In consideration of the demise and leasing of the said premises aforesaid by the lessor, the lessee covenants and agrees to pay lessor as rental for said premises the sum of three hundred dollars ($300) per year, to be paid as follows: $100 on the first day of July, 1932, and $200 on the first day of October, 1932.

"Witness our hands this 4th day of November, 1931.

"Mrs. Robert Hinton, Lessor.

"R. O. Durden, Lessee.

"Witness:   Claude Hoffman."

She also testified that she had not received any rent under the lease; that she did not learn that the appellant had assigned the lease to Mr. Burke until appellant wrote her the 29th day of July, 1932; she came to Fort Smith some time in August or September, and saw appellant several times and demanded the rent from him; she did not at any time ask him about Burke and about collecting rent from Burke; she did not inquire for Burke and did not see him; she did not talk to Mr. George about the crops, with reference to gathering the crops and putting them away; she did not go to Jeff Brown and talk to

him about the crops; she did not ask appellant to take charge of the place for her, she was not trying to get him to look after the place for her; appellant wrote her several letters wanting to rent the place; lease was drawn in appellant's office by Mr. Hoffman, the deputy circuit clerk.

Jeff Brown, witness for appellant, testified in substance that he was on the Hinton place in 1932 and knows A. J. Burke and knows Mrs. Hinton. He saw her at the farm and had a talk with her; she was at the farm in the fall when they were digging potatoes; she instructed him to leave her part of the crop in the field, and he did so; he rented the farm from Durden, but was supposed to pay the rent to Burke; he did not pay appellee any rent, but paid it to Mr. Burke; he paid crop rent and left part of the crop for rent in the field, and Mr. Burke gathered it.

Bud Walker, witness for appellant, testified in substance that he knows A. J. Burke and has seen appellee once or twice; saw her at the farm and saw her and Burke talking together; that this was crop gathering time in 1932; he did not hear what passed between them.

The appellant testified that he is the circuit clerk of Sebastian County; that appellee came to him several times about the farm; that she first wanted to sell it to him; that he owned the adjoining place; that appellee discussed with him a plan to get somebody to look after the place; that the purpose of the lease sued on was to enable him to look after the place for appellee; he told her he would do it without any charge; after the conversation they concluded to draw up a lease; that appellant would look after the property and run it for appellee, and try to help her rent it; the purpose of the lease was to give appellant authority to handle the property for appellee; that, pursuant to the agreement, he got a man to move on the place; he reported to appellee what he had done, and wrote her that he had assigned the lease to Burke; that on one of appellee's trips she inquired about Mr. Burke, who he was and where she could locate him; said she wanted to find Burke so she could collect the rent; appellee at no time made claim that he

owed her any rent; the conversation about Burke took place after the assignment, sometime late in the fall. Witness here identified several letters which were introduced in evidence. The letter written July 29, 1932, is as follows:

"Fort Smith, Arkansas,
"July 29, 1932.

"Mrs. R. S. Hinton,
"Sand Springs, Oklahoma.
"Dear Mrs. Hinton:

"Your letter relative to the rent for your farm at hand and note what you say, but will say in reply that I sold my farm early last spring and also the lease on yours to Mr. Alva J. Burke who is now living on my place and cultivating both farms and assumed the payment of lease. Mr. Burke is a responsible person and is making his home on the farm and very likely will be interested in your farm after this year. I do not know whether he is in a position to take care of the rent at this time or not, but I do know that the farmer can not get any market for hardly anything produced just now.

"Mr. Burke's address is Fort Smith, R. No. 3, North 6th St., if you wish to write him at any time. I will forward your letter to him now.

"Very truly,

"R. O. Durden."

Appellee, recalled, testified about receiving the letters from appellant, and that she wrote to appellant but she did not have the letter, and appellant objected to the contents of the copy, and the court declined to permit its introduction; she testified that she did not know Burke, and never saw him or talked to him; that she knows witness Brown, but did not talk to him anything about the farm or crops, or tell him to leave a part of the rent in the fields; first time she knew of the assignment was when she received the letter of July 29th; she knows Mrs. Burke, saw her once at the farm; she received a letter about the assignment and answered it; never at any time told appellant that she would release him from liability, or that she would look to Burke.

A. J. Burke testified that he does not know Mrs. Hinton; does know the appellant; that in 1932 he was living on the farm that belonged to Mrs. Hinton; took it over from the appellant; he never saw Mrs. Hinton there; he understood that his wife and Mrs. Hinton had been on the farm; he heard that appellee was there, but never saw her.

The jury returned a verdict for $300, judgment was entered for that amount, and this appeal is prosecuted to reverse said judgment.

The lease was executed on November 4, 1931. The appellant wrote to the appellee on July 29, 1932, advising her that he had assigned the lease. Under the terms of the lease, one-third of the amount of the rent was due July 1, 1932, practically a month before he wrote her about the assignment.

The appellee testified that she wrote appellant a letter in response to the letter of July 29th. She did not have the original, but only had a pencil copy, which she was not permitted to introduce in evidence.

Appellant contends that the case should be reversed because the court refused to give his requested instruction No. 7. That instruction, in effect, told the jury that if appellant had breached the lease that appellee could not recover, if the jury further found that after that appellee re-entered the property, directed the handling of the crops, and otherwise exercised control over the property, unless she, at the time, expressly reserved her rights under the contract. In the first place, there is no evidence in the record that would justify the giving of this instruction. The evidence introduced by appellant is to the effect that some time in the fall, when they were gathering crops, the appellee went to the place and directed them to leave her rent on the place. Appellee denies this; but, if it were true, it would not be sufficient to release the appellant. Appellee had a right, not only to collect her rent, but had a right to attach and enforce her lien for the rent. But the evidence on this question is in conflict, and was properly submitted to the jury.

Appellant cites and relies on *Hays* v. *Goldman,* 71 Ark. 251, 72 S. W. 563. The court in that case stated

the law on this point as follows: "When a tenant abandons premises, and returns the keys to the landlord, the latter may accept the keys as a surrender of possession, thereby determining the tenant's estate, and relet the premises on his own account, or he may accept the keys and resume possession conditionally by notifying the tenant or other person returning the keys that he will accept the keys but not the premises, and relet them on the tenant's account, in which case the tenant may be held for any loss in rent caused by his abandonment and the subsequent reletting."

In the instant case, there is no evidence either that the tenant surrendered the premises or that the appellee took possession of same.

Attention is also called to the case of *Williamson* v. *Crossett,* 62 Ark. 293, 36 S. W. 27. The court in that case, in discussing another case, said: "There was no offer to surrender made in that case by the tenant, and nothing to show that the landlord had accepted a surrender of the lease by the tenant."

The same thing is true in the case at bar. The tenant never offered to surrender possession, and the landlord never accepted any surrender, nor undertook to take charge of the premises.

Appellant next calls attention to the case of *Keith* v. *McGregor,* 163 Ark. 203, 259 S. W. 725. The court in that case, among other things, said: "Therefore the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment. * * * The lessee is liable to the lessor on an express covenant to pay rent, even though he had assigned the leasehold with the consent of the lessor, so long as there was not a specific release of liability."

There is no evidence in this case tending to show that the appellee ever released the appellant, but, on the contrary, the evidence shows clearly that she looked to him for the rent.

In the case of *Lansdell* v. *Woods,* 127 Ark. 466, 192 S. W. 715, the court said: "It may be stated at the out-

set that this testimony, if it is competent, would be prejudicial to the rights of the plaintiff. On the ground that there is privity of contract between the lessor and the lessee, the latter is liable to the former upon an express covenant to pay rent, even though there has been an assignment of the term to a third party."

Again this court has said, in speaking of the liability of the lessee, where an assignment has been made: "He still stands liable to his lessor for the rent after it accrued subsequently to his assignment of his lease. This is so because Mrs. McClure did not accept a surrender from him and agree to release him from liability." *Evans v. McClure,* 108 Ark. 531, 158 S. W. 487.

We have carefully examined the instructions given by the court, and find no error in giving or refusing to give instructions. The case was submitted to the jury on proper instructions, and its verdict is conclusive here.

We find no error, and the judgment is affirmed.