MONTGOMERY WARD & COMPANY *v.* METZGER.

4-8968                                              224 S. W. 2d 368

Opinion delivered November 14, 1949.

*David L. Dickson* and *Moore, Burrow, Chowning & Mitchell,* for appellant.

*Rose, Dobyns, Meek & House,* for appellee.

MINOR W. MILLWEE, Justice.   Appellees are members of the Metzger family who own certain business property at Main and Fourth Streets in the City of Little Rock. On October 12, 1934, appellant, Montgomery Ward & Co., as tenant, leased the property from appellees, or

their predecessors in title, for an original term of approximately ten years. The lease provided for payment of fixed rent at the annual rate of $15,600 payable in equal monthly installments.

Other provisions of the lease material to the issues are as follows: "14. In addition to the fixed rental, Montgomery Ward & Co., Inc., shall annually pay a percentage rental equal to 2½% of the gross retail sales (less exchange, allowances, returns, mail order sales and sales taxes) made by it on the leased premises during each lease year in excess of an annual basic sales total of $624,000. The basic sales total shall apply *pro rata* if percentage rent is payable for a period less than a lease year. Payments of percentage rents shall be made within sixty (60) days after the expiration of the year for which made. Before the expiration of 60 days after the expiration of the said period, the tenant shall furnish to the landlord a verified statement showing the computation of the percentage rent for that period; which statement shall be deemed accepted by the landlord, and conclusive, unless within three (3) months after it is furnished the landlord shall cause applicable records to be audited, at the landlord's expense, by a certified public accountant, in a manner which does not unreasonably interfere with the conduct of the tenant's business. . . .

"19. It is contemplated by the parties that the tenant will expend, before or at the time it moves into the leased premises, $30,000 in arranging the fronts and the interior thereof, in improvements that will become part of the building in which the leased premises are situated; such expenditure to be for improvements exclusive of trade fixtures; and the landlord agrees to contribute to such expenditure the sum of $5,000 to be paid in cash substantially at the time the tenant pays for the last of such improvements, and in addition thereto, to allow credits on the first amounts that may be owing to landlord for percentage rents on gross sales (being that which is in addition to the fixed rental herein stated, after deduction hereinbefore stated for rent paid for space not hereby leased) of one-half of the amount

paid by tenant for such improvements to the amount of $20,000 or less; the intent being that the credits on percentage rents to be so given tenant by the landlord shall not exceed $10,000. In addition to the foregoing, the landlord shall at their own expense furnish the necessary material and perform the following work according to the plans and specifications therefor to be furnished by tenant and approved by landlord; such approval not to be unreasonably withheld: 1. Install sub-floor on first floor. 2. Install iron window guards on all skylights. 3. Combine present gas lines in demised premises and connect same to Gas Company mains through one meter.

"20. The tenant shall have the right to extend this lease for an additional 10 years at the same rents and on all the other same terms as herein set forth, on giving to the landlord a notice in writing at least four months before the expiration of the first period of this lease stating its intention to extend. If extended for such second ten-year period, the tenant shall have the right to extend this lease for a third period to and including July 31st, 1964, on giving written notice to the landlord of its intention to extend, at least four (4) months before the expiration of said second period, such extension of this lease to be according to all of its terms and conditions as herein set forth and at the same rate of rent unless the landlord shall, within 45 days after receipt of said notice from the tenant require arbitration proceedings in order to determine the fair rental value of the premises. . . ."

There is also a provision that the lease shall be strictly construed "neither against the landlord nor the tenant." The improvements contemplated by section 19 of the lease were made by appellant at a cost of $30,000 of which $5,000 was contributed by appellees, or their predecessors in title. Prior to the expiration of the original term, appellant exercised its option to extend the lease for an additional ten years commencing October 12, 1944. During the first ten years of the lease the annual gross sales reported by appellant were less than the basic minimum of $624,000 and consequently no percentage rentals accrued or were paid during that period.

The total gross sales reported by appellant for the lease year ending in October, 1945, the first year of the extended period, exceeded the basic minimum of $624,000 and appellant withheld percentage rentals for that year in the amount of $3,278.60 claiming the right to use same for partial reimbursement for its expenditure for improvements in accordance with paragraph 19 of the lease.

The gross sales reported for the year ending October, 1946, also exceeded the basic minimum and appellant withheld percentage rentals for that year amounting to $6,721.40 which, added to the amount withheld for the previous year, made a total of $10,000, the maximum amount provided for in paragraph 19 of the lease.

On December 22, 1947, appellees filed this suit against appellant in the Pulaski Circuit Court alleging facts substantially as hereinabove stated and, "that paragraph 19 of the lease was intended to and did permit deductions from the percentage rental provisions only during the original ten year period of the lease." It was further alleged that demand had been made upon appellant for payment of the $10,000 which it withheld for reimbursement for improvements. Judgment was prayed for said sum together with interest, costs and all proper relief.

Appellant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action against appellant. The trial court overruled the demurrer. Appellant stood upon its demurrer and declined to plead further, whereupon the court rendered judgment against appellant in said sum of $10,000 with interests and costs. This appeal follows.

The truth of the facts above stated and as alleged in appellees' complaint is admitted on demurrer. The question for determination is whether appellant's right to take credit for improvements out of the first percentage rentals due, as provided in paragraph 19 of the lease, is confined to percentage rentals becoming due during the first ten-year period of the lease only or is carried over into the extended period.

Appellant exercised its option to extend the lease for an additional ten years under paragraph 20 which provides that the new ten-year period shall be "at the same rents and on all the other same terms as herein set forth." Appellees concede that the lease in question provides for an "extension" as distinguished from a "renewal" of a lease. The distinction is recognized in our decisions. In *Neal* v. *Harris,* 140 Ark. 619, 216 S. W. 6, the court said: "Both the textwriters and the adjudicated cases make a distinction between a covenant in a lease for a renewal and a provision therein for the extension of the term at the option of the lessee. In the latter case upon the exercise of the option by the lessee there is granted a present lease for the full term to which it may be extended and not a lease for the lesser period with the privilege of a new lease for the extended term." The following statement from Underhill on Landlord and Tenant, Vol. 2, par. 803, was also approved by the court: "So, where a lease gives the lessee a renewal at his election, and he elects to continue, a present demise is created which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease should be executed. In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease." The cases of *Keith* v. *McGregor,* 163 Ark. 203, 259 S. W. 725, 36 A. L. R. 311, and *Beasley* v. *Boren,* 210 Ark. 608, 197 S. W. 2d 287, are to the same effect.

There is only one lease in the instant case and the extended term was provided for therein "at the same rents and on all the other same terms" as set forth in said lease. Unless there is some language in the lease indicating a contrary intention, the "same rents and on all the other same terms" include the right of appellees to receive percentage rentals as set out in paragraph 14 as well as appellant's right to recapture one-half the amount expended in improvements "on the first amounts that may be owing to landlord for percentage rents on gross sales," as provided in paragraph 19. The improve-

ments were for the mutual benefit of both parties and became a part of the building under the specific provisions of paragraph 19. It was contemplated that the parties should equally bear the expense of these improvements if and when percentage rentals accrued in the amount of $10,000. Appellees say that the parties apparently thought there would be percentage rentals during the first 10-year period and it was out of the first of those rentals that appellant was to withhold the sum of $10,000. If so, it could have easily been provided that appellant's right to recapture should be limited to that period. This was not done and the right to recapture was extended to the "first amounts that may be owing to landlord for percentage rents on gross sales."

Appellees also say: "If in an extended term the appellant is relieved of its obligation to expend $25,000 on the building, then its right to reimbursement out of extended term rents also expires, for otherwise there would be no extension 'on *all* the other same terms,' but an extension on part of the same terms." It is thus argued that there is no language in the lease indicating that a part but not all of the provisions of paragraph 19 were to survive the original term. This argument ignores the fact that appellant was required by paragraph 19 to expend $30,000 in improvements "before or at the time it moves into the leased premises" and further provides that the landlord shall contribute $5,000 to such expenditure for improvements "substantially at the time the tenant pays for the last of such improvements." These provisions of the lease were fully performed at the very beginning of the first 10-year term and the provision for extension would not, of course, apply to obligations already fully performed. But there was no performance of appellant's right of recoupment for improvements during the first ten years and the lease cannot be fairly construed as limiting appellant's right to withhold percentage rentals to that period.

No cases have been cited by the parties that are exactly in point. There are cases, however, involving the extension of leases which are analogous to the prob-

lem in the instant case. Annotations found in 37 A.L.R. 1245 and 163 A.L.R. 711 deal with the question whether an extension or renewal of a lease operates to extend an option to purchase contained in the original lease. While there is some division of authority on the question, the annotator states the following as the rule deducible from a great majority of the cases: ''Where the original lease, or agreement to lease, provides for an extension of the term, at the tenant's election, an option therein contained to purchase during the term is likewise extended.'' 163 A.L.R. 712. In the earlier annotation the case of *Grummer* v. *Price,* 101 Ark. 611, 143 S. W. 95, is cited in support of the rule. That case involved an extension of a lease by endorsement and this court held there was an extension of the whole contract, including the option to purchase.

In the case of *Hadad* v. *Tyler Production Credit Assn.,* 212 S. W. 2d 1006 (Tex.), it was held (Headnote 4): ''Where five-year lease gave lessee option to renew lease for additional five-year period, and during term of lease parties entered into a supplemental agreement in writing giving lessee right to make certain alterations in building at lessee's sole cost and right to sub-lease up to 60 per cent of the building, and it was provided that supplemental agreement should be and become a part of the original lease, and lessee gave timely notice to exercise option to keep premises for an additional five-year period, lessee had right to sublet up to 60 per cent of the building during second five-year period, since the lease and supplemental agreement were one contract.'' The court said: ''It is our conclusion and it is so held that when plaintiff timely gave the notice that it exercised its option for a renewal for an additional five years at the maximum rental, its rental rights for such additional period vested in it without the necessity of formally executing a new lease.''

The Missouri court followed the same line of reasoning in *Wright* v. *Logan,* 25 S. W. 2d 799, where it was held (Headnote 1): ''Where lease provided that it should remain in force for period of ten years, with

privilege granted to lessee on notice to extend lease in all of its terms for period of five years from expiration thereof, lessor could not have enforced lease for fifteen years without consent of lessee, and could not have terminated lease of own accord, lease being unilateral in its terms, but option for five-year extension was as much a part of lease as any other element therein, and lease was in effect a present demise for full term of fifteen years, and entitled plaintiff, reserving percentage of rents received under lease, to receive percentage of rent received during five-year extension of lease.'' It is also the general rule that a covenant to renew a lease which makes no provision as to the terms and conditions of the renewal is deemed to imply a renewal for the same rental, terms and conditions as provided in the original lease. 32 Am. Jur., Landlord and Tenant, § 965; Anno. 30 A.L.R. 577, 68 A.L.R. 158; *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S. W. 694.

Under the undisputed facts admitted by the demurrer and the unambiguous terms of the lease, we conclude that appellant's right to withhold percentage rentals to reimburse itself for the improvements made, carried over into the extended period of ten years. The judgment of the circuit court is, therefore, reversed and the cause remanded with directions to sustain the demurrer to the complaint.

GEORGE ROSE SMITH, J., not participating.