Mr. Charles L. Robinson, CPA Legislative Auditor State Capitol, Room 172 Little Rock, Arkansas 72201
Dear Mr. Robinson:
This is in response to your request for an opinion on three questions concerning Op. Att'y. Gen. No. 91-291, recently issued by this office, and Act 10 of 1991, codified at A.C.A. §6-5-301—304 (Cum. Supp. 1991). As you note, Opinion No. 91-291
states that ". . . it is unlawful for superintendents or assistant superintendents to receive any salary increase larger than the average percentage increase of other certified personnel of the district." This statement refers to A.C.A. § 6-5-303(a), which provides that superintendents and assistant superintendents may not receive any salary increases at all for school years 1991-1992 and 1992-1993 from the "Educational Excellence Trust Fund" monies. The section then states that "[a]ny salary increase received from any other funds by any superintendent or assistant superintendent shall be no larger than the average percentage increase of the certified personnel of the district."
Your three questions regarding this provision are as follows:
 1. What effect does Act 10 of 1991 have on a single or multi-year superintendent's contract executed prior to the effective date of Act 10 of 1991?
 2. May a superintendent having a contract executed prior to the effective date of Act 10 of 1991 receive a contracted salary increase which is larger than the average percentage increase of other certified personnel of the district?
 3. Do the provisions of Act 10 of 1991 supercede preexisting provisions of a superintendent's employment contract?
Each of your questions asks essentially the same question: to what extent does Act 10 of 1991 operate to require reduction of a superintendent's salary where he or she executed a contract with the district prior to the effective date of the act?
For the reasons that follow, it is my opinion that to the extent a superintendent and the district executed a "single" contract (meaning, presumably, a one-year contract) prior to the effective date of the act, the salary negotiated in that contract should govern despite the provisions of A.C.A. § 6-5-303(a). If construed otherwise, the statute might amount to a constitutionally impermissible impairment of the obligation of contracts (see United States Constitution, art. I, § 10, and Arkansas Constitution, art. 2, § 17), and statutes will be construed, if possible, as constitutional. Urrey Ceramic TileCo. v. Mosely, 304 Ark. 711, 805 S.W.2d 54 (1991).
If, however, a "multi-year" contract is executed prior to the effective date of the act, it is my opinion that the salary negotiated under that contract will remain unimpaired only for the first year of the contract if the contract is "renewed" after this first term. After that first year, the contract may be "renewed," at which time the provisions of the act will require that the salary be renegotiated in compliance with its provisions.
With regard to the constitutional issue, it has been stated that:
 Except in so far as created or protected from interference by other constitutional provisions, generally, public offices and employment confer on their holders no rights that are protected by the constitutional prohibition of the passing of laws impairing the obligation of contracts. Since they are not grants, contracts, or obligations which cannot be impaired by an act of the legislature, the legislature may deal with such office absolutely as it pleases, and may even abolish them altogether. It follows that it may abridge, or extend the term or tenure of office, change the terms and conditions of office holding or public employment or the duties thereof, and increase or reduce the compensation of persons already in office. . . . [Footnotes omitted.]
 A distinction must be made, however, between the power of the state to pass laws affecting officers and its power over contracts made under statutes or ordinances for the performance of professional or private services for a fixed time at a fixed sum, as such contracts of employment are within the protection of the constitution and may not be impaired. . . .
16A C.J.S. Constitutional Law § 306 at 189-190. See also,Humphrey v. Wyatt, 188 Ark. 676 (1934), and Gentry v.Harrison, 194 Ark. 916 (1937).
The case of Landers v. Murphy, 169 Ark. 115 (1925), is also relevant. In that case, a county school superintendent sued to prevent an election, under a new act, to elect a new "county supervisor." He argued that his contract had not yet expired, and as such the contract was void on the ground that it impaired the obligation of his contract. The court, in a somewhat nebulous holding stated that:
 The statute cannot be held to be invalid, for, if the position held by appellee was a public office, the Legislature could abolish it, and, if it was a contract of employment, the obligation thereof was not impaired by creating a new office or employment. [Citations omitted.] In any event, appellee's remedies, if any, for breach of contract are not impaired by the enactment of this statute.[1]
169 Ark. at 116.
The legislature, through Act 10 of 1991, has not created a new office as in Landers. It has sought directly to limit salary increases for superintendents. To the extent a contract has already been executed prior to the effective date of the act, it is my opinion, under the constitutional principles set out above, that the act may not be applied to the contract so as to impair its provisions. As such, Act 10 of 1991 will not be construed to require a reduction of those contracts, as statutes will be construed, if possible, as constitutional. See Urrey,supra.
With respect to "multi-year" contracts, however, it should be noted that A.C.A. § 6-17-301 provides as follows:
 (a) District school boards may employ superintendents, deputy superintendents, assistant superintendents, and high school principals, as well as department heads, coaches, teachers, and other certified personnel, by written contract for a period of time not more than three (3) years.
 (b) Such contracts may be renewed annually.
[Emphasis added.]
The statute above, although it allows contracts for terms up to three years, states that such contracts "may be renewed annually." It is generally held that "an option to renew a contract is the right to require the execution of a new contract while an option to extend the term merely operates to extend the term of the original agreement." 17A C.J.S. Contracts, § 449 at 560. See also Felder v. Hall Brothers Company, 151 Ark. 182
(1921) (holding the natural and ordinary meaning of the term "renew" implies that the contract is to expire, and might thereafter be "renewed"); and Montgomery Ward Company v.Metzger, 216 Ark. 88, 224 S.W.2d 368 (1949).
Once the initial year of the contract has expired, it is my opinion that if the contract is "renewed" under the statute, Act 10 of 1991 must be incorporated into the renewed contract. This means that in those years of the "renewed" contract, the superintendent may not receive a salary increase greater than the average increase of the personnel in the district. It is my understanding that, typically, these contracts are executed as three-year contracts, but each year a new three-year contract is executed and thus "renewed." It is also my understanding that, typically, these contracts include "factors" which determine a superintendent's salary on the basis of salary increases of other personnel. Even though a contract which is executed prior to the effective date of Act 10 of 1991, in my opinion, is not subject to the salary limitation contained therein, if the contract is "renewed" this law must be complied with in the execution of the new contract. This may entail a reduction of the "factor" used to compute the superintendent's salary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The court based its decision that the contract was not impaired on cases which create a distinction between a contract being impaired, and a contract being breached. See Caldwell v.Donaghey, 108 Ark. 60 (1913); and Morgan Construction Co. v.Pitts, 154 Ark. 420 (1922). According to these cases, the latter may occur although the former does not. The rationale is that even though a contract may be breached, it is not "impaired" if remedies for breach of contract still exist. It is unclear in this instance, however, what remedies for breach of contract would exist. The school district would not have breached the contract volitionally, and the state is not a party to the contract. Sovereign immunity considerations will also attach.